## Chesapeake & Ohio Railway Company v. Commonwealth, By, etc.

(Decided October 22, 1920).

### Appeal from Franklin Circuit Court.

1. Taxation—Authority to Make Assessment.—Where the board of valuation and assessment has duly considered a report filed by a railroad company in fixing the value of its franchise, the conclusion of the board is final where it had before it the data necessary to enable it to fix a proper valuation upon said franchise—no fraud being shown.

2. Taxation—Spoliation.—If the assessing board acts corruptly or fraudulently or makes an assessment amounting to spoliation or by mistake or oversight the property is so assessed as to amount to double taxation, adequate relief will be granted an aggrieved taxpayer.

3. Taxation—Failure to Assess Property.—Failure of a corporation to report any item or species of property that it is called upon to report together with its value is an omission and not an undervaluation of its property and may be assessed in a suit brought for that purpose.

4. Taxation—Omitted Property.—In a suit to assess alleged omitted property the Commonwealth must first show the omission of any property that should have been reported together with its nature and value and when this is done the corporation must show by clear and convincing evidence that notwithstanding the omission the board in making the assessment considered and assessed the value of the alleged omitted property from information gathered from sources outside the report.

5. Taxation—Omitted Property.—In a suit to assess alleged omitted property where the testimony conclusively shows that the assess-

ing board had before it the information necessary to enable it to arrive at a fair valuation the petition should be dismissed.

6. Taxation—Review of Assessment.—It is alleged that a railroad company in making its report to the auditor included in the item designated "other expenses" various items which were in reality profits and not expenses, but since the evidence conclusively shows that the details of the several items were explained to the members of the board and they were fully apprised as to the nature thereof, the board having before it the same data as presented by the present record, this court is without power to review the action of the board, which, under the circumstances, is final.

HUNT, NORTHCUTT & BUSH, R. L. NORTHCUTT, T. L. EDELEN and WORTHINGTON, COCHRAN, BROWNING & REED for appellant.

PAUL C. GAINES, County Attorney, LESLIE W. MORRIS, HAZELRIGG & HAZELRIGG, HOBSON & HOBSON and CHAS. I. DAWSON, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

This appeal brings in question the correctness of the assessment of appellant's franchise for the taxable years 1907 to 1911 inclusive.

Railroads and other corporations performing any public service or exercising any special or exclusive privileges not allowed by law to natural persons are required to pay an annual tax on their franchise to the state. Ky. Stats., sec. 4077.

In order to enable the board of valuation and assessment (at that time charged with the duty), to fix the value of said franchise, appellant and other companies were required each year to report to the Auditor of Public Accounts, on a form prescribed by him, a verified statement containing certain detailed information as provided by Ky. Stats., sec. 4078.

The form so prepared by the auditor, in addition to other data, called for a statement of the gross and net earnings or income. Following the line for the gross income are eight enumerated credits, designated in the report as expenses, to-wit, salaries, wages, interest, dividends, enlargement of plant, maintenance of equipment, depreciation and "other expenses." But one line is given for each. By deducting these several items from the gross income the net income is found.

Appellant filed its reports for each of the years involved.

A franchise tax is a property tax and is nothing more than the taxation of all the corporation's intangible property, including its capital. To ascertain the value of this franchise it is provided in Ky. Stats., secs. 4079 and 4080, that from the report filed by the company and from such other evidence as it may have, the board shall fix the value of the company's capital stock and from the amount thus fixed shall deduct the assessed value of all the tangible property in the state.

The board is vested with a large discretion in determining the value of the franchise; several methods have been adopted in so fixing it, e. g., the stock and bond method, addition of the surplus to capital or the capitalization of the net income. It may adopt any one of these, or indeed the several processes may be combined. Hager v. American Surety Co., 121 Ky. 791, 90 S. W. 550.

We are not advised as to the method adopted by the board in fixing the value of appellant's franchise for the years in litigation. Appellee insists it was by capitalizing the income, and there is much ground to sustain this view.

It is appellee's contention that under the designation of "other expenses" the company included a number of taxable items that instead of being expenses were in fact profits. Using the year ending June 30, 1906, as an illustration, the item "other expenses" was made up as follows:

| | |
|---|---|
| Payment on principal of equipment trust bonds | $ 998,333.33 |
| Extraordinary expenditures for improvements, etc | 1,534,406.09 |
| Greenbrier Railway Sinking Fund | 20,000.00 |
| Discount on bonds sold, etc. | 17,500.00 |
| Securities sold and written off | 398,321.47 |
| Old accounts written off | 5,286.21 |
| Loss on C. & O. Steamship lines, etc. | 60,366.37 |
| Total | $3,034,213.47 |

If, therefore, this amount or any portion thereof was improperly deducted from the gross income or earnings apportioning to Kentucky its due share, it can readily be seen how materially this would have affected the valuation of the franchise.

Capitalizing this sum on a basis of 6 per cent. on Kentucky's proportion (29.64 per cent. of appellant's line be-

ing in this state), gives a total of $14,888,924.54; equalizing this amount at sixty per cent. gives a net sum of $8,933,354.72.

Kentucky Statutes, sec. 4083, is as follows:

"It shall be the duty of the auditor, immediately after fixing such values by said board, to notify the corporation of the fact; and all such corporations shall have thirty days from the time of receiving the notice to go before such board and ask a change of the valuation, and may introduce evidence, and the chairman of the board is hereby authorized to summons and swear witnesses and, after hearing such evidence, the board may change the valuation as it may deem proper, *and the action of the board shall be final.*"

At the outset it becomes important to inquire into the finality of the board's action. In Coulter, Auditor v. Louisville Bridge Co., 114 Ky. 42, 76 S. W. 29, an attempt was made to reconsider appellee's franchise assessment, it being contended that a new board could review the action of its predecessor. But this right was denied, the court saying:

"We are of opinion and hold that when the proper assessing officers, within the time and substantially in the manner prescribed by statute, have acted in considering and fixing the valuation upon property liable to assessment for taxation, and no relief has been obtained within the time allowed by statute for correcting their action, if erroneous, that action is final."

First National Bank v. Hopkinsville, 128 Ky. 383, 108 S. W. 311, 16 L. R. A. (N. S.) 685. Here it was claimed the bank had not received proper credit on account of United States bonds owned and held by it, but the court says it could not presume that no reduction had been made on this account. In the opinion it is said:

"The only way by which we could ascertain this fact would be to examine the assessment and determine whether or not a proper valuation was fixed upon appellant's shares of stock. The effect of this would be to substitute the judgment of the court for that of the assessing officers; in other words, to make a new assessment. This is not a case where the assessment is void. Nor is it a case where a party is assessed upon property which he does not own. It is simply a case where the claim is made that the assessment is too high because appellant was not given credit in the assessment fixed for the amount of its

government bonds. In order to hold that appellant is entitled to recover, we would have to say that the assessment was too high. This we have no power to do after the assessing officers have passed upon the question, and no complaint has been made to them within the time prescribed by law.''

Southern Pacific Co. v. Commonwealth, 134 Ky. 410, 120 S. W. 309. In this suit it was charged that the valuation fixed by the board was unauthorized, illegal and void and the Commonwealth asked for a writ of mandamus to require the board to meet again and assess the company's franchise for the years named. We quote from the opinion as follows:

''This was an exercise of judgment on their part. The statute confided to them the valuing of the property. The taxes were paid upon the valuation. Their action was not void. They discharged the duty devolved upon them by the statute as best they could, and, if they erred in judgment, that is no reason why the court should award a mandamus against them requiring them to meet again and make an assessment of the franchise. If a mandamus were awarded, the present board would only be able to make another lump assessment on the same report.''

After referring to Coulter, Auditor v. Louisville Bridge Co., *supra,* the opinion continues:

''Here the board in the years named acted upon the reports returned to it and made an assessment. Their action is final, and the present board is without authority to act in the premises.''

To the same effect is Kentucky Heating Co. v. City of Lousiville, 174 Ky. 142, 193 S. W. 4, in which many authorities on this proposition are collated. In summing up the effect of the several decisions the court concludes that when it is clearly made to appear that the assessing board acted corruptly or fraudulently, or made an assessment amounting to spoliation, or by mistake or oversight property is assessed in such manner as to subject it to double taxation, the aggrieved taxpayer will be granted adequate relief. And if the board, from the facts and figures reported to it, made an erroneous assessment, due to mistake on the part of the board in applying the law, the court will review the finding and grant the necessary relief. ''But,'' to use the language of the court, ''where the mistake complained of is a mere error of judgment involving only the correct valuation of the property, as

where the taxpayer insists that it should be valued at one sum and the board values it at another and a higher sum, the finding of the board will be conclusive and the court will not undertake to review or correct it unless it is clearly shown that the valuation fixed by the board is so excessive as to amount to spoliation.''

In Commonwealth v. Kentucky Heating Co., 180 Ky. 607, 203 S. W. 538, upon a reconsideration of the opinion reported in 176 Ky. 35, 195 S. W. 459, it is said that when a corporation fails to report any item or species of property of any kind or character owned by it that it is called upon to report to the board and the value thereof, the failure to report such item of property and the value thereof is an omission and not an undervaluation of its property by the corporation and this item may be assessed at the suit of a revenue agent or the sheriff in the manner provided by statute. Also that in a suit to have alleged omitted property assessed, the burden is on the Commonwealth to show the omission of property that should have been reported, and the nature and value of same, and when this is done the burden is on the corporation to show by clear and convincing evidence that notwithstanding the omission, the board in making the assessment considered and assessed the value of the omitted property on information gathered from sources outside of the report.

In the present suit the Commonwealth has pointed out the items which it claims were omitted. In other words, though listed as ''other expenses,'' it is urged they were not properly classified and to this extent, and for this reason, appellant was assessed and paid franchise taxes on an amount much smaller than that warranted and authorized by the facts.

L. & N. R. R. Co. v. Commonwealth, 181 Ky. 193, 204 S. W. 94, was a proceeding instituted by a revenue agent seeking to have assessed against the company what was claimed as omitted intangible property, and among other questions this suit involved an item of $277,820.92 reported by the company under the head of ''other expenses.'' Being unable to ascertain from the record the true facts as to this item, and whether it should have been deducted from the earnings, the matter was referred to the trial court for a proper adjustment of same, with instructions that if the proof showed it was in reality earnings or income, and had been falsely or inaccurately reported, thereby decreasing the value of the company's franchise,

a judgment should be entered making the correction according to the method employed by the board in assessing the company's intangible property for that year.

Preliminary to the question of whether the items pointed out by the Commonwealth were concealed or improperly deducted from the earnings, is the inquiry as to whether appellant has shown by satisfactory and sufficient evidence that notwithstanding the omission, if there was such, the board in making this assessment considered or assessed the value of the alleged omitted property on information gathered from sources outside of the report; because if such be the case, the conclusion of the board being final, we are not permitted to examine into these items, nor to correct the assessment.

On this question the Commonwealth introduced three witnesses: (1) the secretary of the board of valuation and assessment for 1917 and 1918, who merely testified as to the minutes of the board during the years involved; (2) Frank James, auditor for 1908-1912, who had no specific recollection of what occurred before the board while he was a member of same. He did not recall that a representative of appellant had been before the board, and did not think the board had before it the stockholders' reports, and that the board never used these reports in making the assessments; (3) H. V. McChesney was a member of the board from 1905 to 1908. He says tentative assessments were usually made from reports made to the auditor. He has no recollection as to what was done in any particular year. He could not state positively whether the board had the stockholders' reports, but he says a representative of the company usually made an argument before the board and responded to questions. And, to use his language, "we asked them particularly about the big items that were not quite self explanatory, like 'other expenses' items. . . . " This was all the evidence introduced by the Commonwealth.

As to the testimony adduced by appellant: Polk Laffoon was secretary of the board for 1906 and 1907. He says it was the practice of the board to have representatives of the companies come before it to submit such data as they had either printed or oral; to explain all the items in the report so that the board would be furnished with everything it wanted, and all information necessary in making a correct and proper valuation; he thinks a representative of appellant came before the board each year.

Furthermore the board required the company's representative to explain the items bracketed in the report under the headings of enlargement of plant and ''other expenses;'' that Mr. Wall always brought with him his annual report, and showed the board the items making up the ''other expenses'' as contained in his report, all of which was disclosed in detail in the annual reports which the board had before it.

Garrett B. Wall, assistant federal manager at the time his testimony was given, says he appeared before the board each year; he procured from the comptroller a memorandum showing the items which went to make up the totals in their franchise reports under the heads of ''other expenses and enlargement of plant,'' and he submitted this to the board. These items were identical to the items contained in the report to the stockholders and he always had the report of the stockholders with him. He says the board asked him for information as to the separate items making up the ''other expenses'' and he showed them where it was and what the items were; that the items constituting ''other expenses'' were not given in detail in the report to the auditor, because the form prepared by the state did not provide for them.

Dr. Ben L. Bruner, was secretary of state from 1908-1912, during which time he was a member of the board. He says the board discussed the item ''other expenses'' and when Mr. Wall appeared before them they would ask him about it. That Mr. Wall usually had with him the annual report to the stockholders, also a station report. The board called for them all the time. According to this witness the board generally tried to satisfy itself that proper statements had been made. Mr. Wall always had a report showing the accounts entering into the item ''other expenses.''

C. W. Parrish, was secretary of the board from 1908 to 1912, succeeding Laffoon. He says Mr. Wall was before the board every year; he always brought his annual report and a great many other figures and he would explain in detail what reports they were in; the board always questioned him in regard to these different items. It was nearly always the custom of the board in fixing franchises, if they thought the item ''other expenses'' was large, to bring the people before the board and question them as to these expenses and Mr. Wall always brought the information requested.

It is difficult to see how there can be any difference of opinion as to the effect of this testimony, the substance of which we have endeavored to give. The conclusion seems irresistible that the board in fixing the value of appellant's franchise for the years involved had before it the information necessary to enable it to arrive at a fair valuation thereof.

It would seem the company has sustained the burden cast upon it in the introduction of the character of proof this court has held necessary for that purpose. The evidence establishes the fact that the board was advised as to the items embraced in "other expenses" as reported to the auditor. Although we might be satisfied the valuation fixed by the board was too low, we can not correct it. The duty devolved upon the board to exercise its judgment and to fix the value of the franchise and if the reports and other data furnished the board by appellant disclosed substantially the same facts as presented by the record, and from the evidence we are constrained to believe this was the case, we are without power to order a revaluation or reassessment—the action of the board precludes it.

Railroads operating in the state are now required to furnish to the State Tax Commission, upon request, a true copy of all reports of income or earnings made to their stockholders, or furnished to the Interstate Commerce Commission, act of May 2, 1917 (Ky. Stats., sec. 4019a-15). If it has not done so, it would be well for the commission to avail itself of this provision. In an act of April 11, 1917 (Ky. Stats., sec. 4114i-11), creating the State Tax Commission, that body is vested with all the powers and duties as to the assessment of property for taxation theretofore formerly exercised or performed by the State Board of Valuation and Assessment and other specified agencies. In sec. 10 of said act (Ky. Stats. 4114i-10), it is provided that the commission shall keep a record of its proceedings. It would be well to have a stenographic report of all of its proceedings and of everything that transpires during the sessions, especially in any hearing or argument relative to corporate assessments. Such procedure, if followed, will remove the element of uncertainty as to the steps taken in fixing assessments and in case of litigation growing out of the assessment would enable the court to know exactly what transpired and what the assessing body considered in reaching its conclusions.

The term "other expenses" is too general and indefinite. To avoid confusion and misunderstanding the items constituting same should be stated separately, and if the form submitted does not provide sufficient space, the reporting companies can attach to the report a supplement indicating the accounts included and the amounts of each. It would then not be necessary to rely upon the recollection of ex-members and others many years afterwards when the press of other matters must necessarily have beclouded their memory.

There is no evidence appellant withheld any information that should have been furnished the board, nor does the evidence show the concealment of any of the company's assets; at most it was but an error of judgment on the part of the board in undervaluing appellant's franchise. What we have said includes all items claimed to have been omitted.

The judgment is reversed with instruction to dismiss the petition.