## State Tax Commission et al. v. Central Greyhound Lines.

(Decided Jan. 12, 1934.)

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellants.

R. W. KEENON and R. H. TOMLINSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and one of the defendants below, State Tax Commission of the Commonwealth of Kentucky, pursuant to the provisions of section 4077 et seq. of our present Statutes, assessed against the appellee and plaintiff below, Central Greyhound Lines, intangible property owned by it in this state in the form of a franchise for the taxation of which provisions are made by the Statutes, supra.

The valuation of the property so assessed was fixed by defendant at $25,000, and, contending that it was not liable for the tax, and that to enforce its collection would be taking its property without due process of law contrary to section 1 of the Fourteenth Amendment to the Federal Constitution, and that the tax would be a burden on interstate commerce, plaintiff filed this action in the Franklin circuit court against the above defend-

ant, and J. Dan Talbott, auditor of public accounts for the commonwealth, seeking to enjoin them from enforcing the collection of any tax upon the assessment so made, and from certifying any proportionate part of it to any governmental subdivision through which plaintiff operated its passenger bus line in this commonwealth, for taxation by it or them. As grounds therefor.it alleged in its petition that it was a foreign corporation operating a passenger bus line between the cities of Cincinnati, Ohio, and Louisville, Ky., by far the greater portion of which was and is in this commonwealth and the business transacted over and upon its public highways; that it was a foreign corporation, having been organized under the laws of the state of Ohio, with its home office in the city of Cleveland in that state; that it owned no tangible property whatever in this state, but that it employed daily in the prosecution of its passenger-carrying business in this commonwealth from two to four passenger busses and which number were practically continuously in this state and devoted to such employment; that all the busses owned by it, including those employed in this commonwealth, had a taxable situs in the state of Ohio; and that plaintiff assessed them in that state and paid taxes therein. It admitted that it had complied with all regulatory statutes in this commonwealth to entitle it to operate its business as an interstate carrier of passengers in which it was engaged. Defendants demurred to the petition which the court overruled, and they declining to plead further, the injunction prayed for was granted and, complaining thereof, they prosecuted this appeal.

It is correctly stated in the brief of learned counsel for plaintiff that ''the sole and only question involved in this controversy is, whether or not an interstate bus operator is liable for a franchise tax to the state of Kentucky.'' The correct answer to that question is determinable from the facts, and adjudicated principles of law applicable thereto. But, before we attempt an answer, it is necessary to focus our attention to the precise and exact question involved and which, when done, will eliminate from the case much of what we conclude are immaterial principles discussed in briefs, and in the cited cases in support thereof. Such precise and exact question is: Whether plaintiff has property in this commonwealth having a taxable situs therein and, if so, is it immune from payment of ad valorem taxes at such

situs in this commonwealth because its owner is a non-resident, and the property is employed exclusively in interstate commerce? That narrowing of the question excludes all others, such as the right of a state to license or tax a foreign corporation for permission to conduct business within its territory, and it also excludes from consideration its right to tax the property of a foreign corporation (whether engaged in interstate commerce or not) that may be only temporarily within the jurisdiction of the taxing state and which has not acquired, under any legal principle, a permanent situs within that jurisdiction, but only a casual and temporary one in passing through it as a means of conducting the business in which it is employed by the owner. It also excludes all police license fees and charges. With those questions eliminated, the exact one for determination is greatly reduced and because of which a large portion of appellee's argument becomes inapplicable.

In an unbroken line of cases coming before us since the enactment of the statute, supra, we have held that the tax thereby imposed, and which for lack of a better name has been designated as a "franchise" tax, has been held to be a property tax subject to ad valorem taxation the same as is *tangible* permanently located property within the commonwealth. Some of the cases in which that conclusion was approved are: James, Auditor, v. Kentucky Refining Co., 132 Ky. 353, 113 S. W. 468; Bosworth, Auditor, v. Evansville & Bowling Green Packet Co., 178 Ky. 716, 199 S. W. 1059; Chesapeake & Ohio Railway Co. v. Commonwealth, 190 Ky. 552, 228 S. W. 15; Commonwealth v. Southern Railway Co., 193 Ky. 474, 237 S. W. 11; Commonwealth, by, etc., v. Atchison, Topeka & Santa Fe Railroad Co., 214 Ky. 339, 283 S. W. 119, 121; Baltimore & Ohio Southwestern Railroad Co. v. Commonwealth, 177 Ky. 566, 198 S. W. 35; Blue Coach Lines, Inc., v. Lewis, 220 Ky. 116, 294 S. W. 1080. Many prior ones to the same effect are cited in those opinions. Those cases as well as the one of Adams Express Co. v. Ohio State Auditor, 166 U. S. 185, 17 S. Ct. 604, 41 L. Ed. 977, uphold the right of a state to localize its proportionate part of the valuation of the taxpayer's franchise that may have a situs for taxation within its boundaries and which is ascertained with the aid of certain rules and formulas with which we are not at this point concerned, since no complaint of the method employed herein is made. We do not

understand learned counsel to contend otherwise, but they argue: (1) That, since the petition states that their client has no tangible property in Kentucky, and pays taxes on all such property (as well as upon its intangible franchise property) in the state of Ohio, it necessarily follows that it has no intangible taxable property in this jurisdiction; and (2) that the imposition of the tax would be a burden on interstate commerce, which the commonwealth of Kentucky, under the Federal Constitution (art. 1, sec. 8, cl. 3), is without authority to impose, and we will now direct our attention and confine our discussion to those two arguments.

Argument 1 is chiefly sought to be sustained by the case of Commonwealth v. Lee Line Co., 159 Ky. 476, 167 S. W. 409, 410. The commonwealth in that case sought to tax the Lee Line Company for the proportionate part of its intangible franchise property alleged to have had a permanent situs in this state, under the same statutes supra; but the facts were that the appellee therein owned and operated steamboats on navigable streams bordering this commonwealth, and which, so far as maritime matters are concerned, were within the exclusive jurisdiction of the federal government. It did not own any physical or tangible property in this jurisdiction having a taxable situs therein, nor did it appropriate any of the public highways of the state in the conduct of its business, nor did it do so upon any other space or territory over or upon which Kentucky could exercise jurisdiction regulating its business. That fact was emphasized in the opinion when it said: "It [Lee Line Company] operates a line of boats along navigable waters lying between this and other states. This right of navigation is not conferred by or under the control of this state, but is subject to federal control alone." Other expressions in that opinion (with the one we have inserted) make it clearly apparent that, since the business there being conducted was not under the supervision or control in any respect of Kentucky, but was operated exclusively upon and over territory entirely under the control of federal jurisdiction, it could be operated without obtention of any sort of right or permit from the state. The instrumentalities (boats) employed in such operation therein never gained a taxable situs in this state, and in the absence of such taxable situs of tangible property within this jurisdiction there could be no intangible franchise property subject to the pay-

ment of an ad valorem tax. It is argued that the doctrine of that case is strictly applicable to this one, but with which we do not find ourselves able to agree.

In the case of Commonwealth, etc., v. Atchison, Topeka & Santa Fe Railroad Company (sometimes referred to as Commonwealth v. Union Pacific Railroad Company) supra, and cases therein cited, the question was whether a certain amount of rolling stock (cars) of appellees had a permanent taxable situs in this state although no one particular car was permanently located therein, but only employed in this and other states in the transportation of interstate freight, in which appellees were engaged. It became necessary in the determination of that question for us to ascertain and determine whether appellees had any proportionate number of cars permanently located in this jurisdiction, or whether any such number could be so located, and if so, upon what theory. In arriving at the conclusion that under such circumstances a certain proportionate part of the owner's cars or transportation vehicles acquired a permanent taxable situs in this jurisdiction, under principles discussed and approved in other domestic cases, and a number from the Supreme Court of the United States, we said: "As we have seen, chattels 'transiently present in the transactions of commercial operations,' or but temporarily located within the state, do not as a general proposition acquire a situs for taxation within such state. However, if the resident of one state brings or sends his property into another state to use and employ it permanently there, it is settled that such property must bear its fair share of the burden of taxation, although no one unit of such property is ever more than temporarily located within the taxing state. The shifting units but take the place of each other, and the property as a whole receives the state's protecting care. Even as the hive is the hive, though the bees of the spring have long since been replaced by the bees of the summer and these by the bees of the fall, so the property is the property, though its units have changed many times in the course of the year."

The latest case from the Supreme Court of the United States, recognizing the soundness of that method for the purpose of locating *tangible* property within a state for the purposes of ad valorem taxation, is Johnson Oil Refining Co. v. State of Oklahoma, etc., 290 U.

S. — , 54 S. Ct. 152, 154, 78 L. Ed. — , which was and is a case (except that tangible property was there involved) on practically all fours as to its facts with the instant one. Tangible rolling property of the owner, a nonresident of the state of Oklahoma, was sought to be taxed in that state, and it was resisted on the ground that the owner was a nonresident of the state and a citizen of the state of Illinois and that it paid taxes on the identical property sought to be taxed in its home state; while the taxing authorities of Oklahoma contended that, since the carrier maintained a distributing station in that state from which the cars sought to be taxed were loaded and began their journey of interstate distribution, all of such rolling stock so engaged should be locally taxed. That question was decided against Oklahoma, but the Supreme Court in doing so had occasion to, and did, say: "The basis of the jurisdiction is the habitual employment of the property within the state. By virtue of that employment the property should bear its fair share of the burdens of taxation to which other property within the state is subject. When a fleet of cars is habitually employed in several states —the individual cars constantly running in and out of each state—it cannot be said that any one of the states is entitled to tax the entire number of cars regardless of their use in the other states. When individual items of rolling stock are not continuously the same but are constantly changing, as the nature of their use requires, this Court has held that a state may fix the tax by reference to the average number of cars found to be habitually within its limits. Marye v. Baltimore & O. R. Co. [127 U. S. 117, 32 L. Ed. 94, 8 S. Ct. 1037], supra. This principle has had frequent illustration. It was thus stated in American Refrigerator Transit Co. v. Hall [174 U. S. 70, 43 L. Ed. 899, 19 S. Ct. 599], supra: 'It having been settled, as we have seen, that where a corporation of one state brings into another, to use and employ, a portion of its movable personal property, it is legitimate for the latter to impose upon such property thus used and employed its fair share of the burdens of taxation imposed upon similar property used in like way by its own citizens, we think that such a tax may be properly assessed and collected, in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business, and that the tax may be

fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed.' See, also, Union Refrigerator Transit Co. v. Lynch [177 U. S. 149, 44 L. Ed. 708, 20 S. Ct. 631], supra; Union Refrigerator Transit Co. v. Kentucky [199 U. S. 194, 50 L. Ed. 150, 26 S. Ct. 36, 4 Ann. Cas. 493], supra; Germania Ref. Co. v. Auditor Gen., 184 Mich. 618, 151 N. W. 605, affirmed in 245 U. S. 632, 62 L. Ed. 521, 38 S. Ct. 63; Union Tank Line Co. v. Wright [249 U. S. 275, 63 L. Ed. 602, 39 S. Ct. 276], supra.''

Many prior opinions by the same court are approvingly referred to in that opinion bearing upon the same question, but which we need not insert.

Following that principle, the number of busses which the petition shows plaintiff daily operates in this state would authorize it to assess for taxation the proportionate part of the tangible rolling stock of plaintiff that may be found to have, under the rule supra, a permanent taxable situs here, and which clearly distinguishes this case from the Lee Line one upon which, we repeat, learned counsel for appellee chiefly relies. If, therefore, it is essential to the ownership of *intangible* or *franchise* property in this state, subject to ad valorem taxation against a foreign interstate carrier, that it also own *tangible* property within this jurisdiction, then, under the rule so well established by the cases, supra, plaintiff does own such tangible property within this jurisdiction and which is an aliquot part of all of its busses, which is the proportion that the number of them it employs in this state bears to the whole number, or valuation thereof, that it employs over its entire lines. Therefore under the cases referred to, and others found in those opinions, plaintiff is liable to be taxed for the proportion of its franchise located within this state, to be measured by the rule, supra, as so clearly set forth in the cases of Commonwealth v. Atchison, Topeka & Santa Fe Railroad Company, and Baltimore & Ohio Southwestern Railroad Company v. Commonwealth, supra. We, therefore, conclude that argument 1 is without merit and cannot be sustained.

A brief reference to argument 2 is all that is necessary for its disposition. The question is answered adversely to the contention of learned counsel in many of the opinions to which we have referred, and in the recent Johnson Oil Refining Case from the Supreme

Court of the United States, in dealing with that exact question, and in giving a negative answer thereto, the court said: "Although rolling stock, such as these cars, is employed in interstate commerce, that fact does not make it immune from a nondiscriminatory property tax in a state which can be deemed to have jurisdiction. Marye v. Baltimore & O. R. Co., 127 U. S. 117, 123, 32 L. Ed. 94, 96, 8 S. Ct. 1037; Pullman's Palace-Car Co. v. Pennsylvania, 141 U. S. 18, 23, 35 L. Ed. 613, 616, 11 S. Ct. 876 [3 Inters. Com. Rep. 595]; American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 82, 43 L. Ed. 899, 19 S. Ct. 599, 604; Union Refrigerator Transit Co. v. Lynch, 177 U. S. 149, 152, 44 L. Ed. 708, 710, 20 S. Ct. 631; Union Tank Line Co. v. Wright, 249 U. S. 275, 282, 63 L. Ed. 602, 607, 39 S. Ct. 276. Appellant had its domicile in Illinois and that state had jurisdiction to tax appellant's personal property which had not acquired an actual situs elsewhere. 'The state of origin remains the permanent situs of the property, notwithstanding its occasional excursions to foreign parts.' See New York ex rel. New York C. & H. R. R. Co. v. Miller, 202 U. S. 584, 597, 50 L. Ed. 1155, 1160, 26 S. Ct. 714, 717; Southern P. Co. v. Kentucky, 222 U. S. 63, 69, 56 L. Ed. 96, 98, 32 S. Ct. 13. But the state of the domicile has no jurisdiction to tax personal property where its actual situs is in another state. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 209, 211, 50 L. Ed. 150, 155, 26 S. Ct. 36, 4 Ann. Cas. 493; Western U. Teleg. Co. v. Kansas, 216 U. S. 1, 38, 54 L. Ed. 355, 370, 30 S. Ct. 190; Frick v. Pennsylvania, 268 U. S. 473, 489, 69 L. Ed. 1058, 1062, 45 S. Ct. 603, 42 A. L. R. 316."

That conclusion is manifestly correct, since the ad valorem tax sought to be imposed upon the value of property having a permanent situs in this state has no connection whatever with a tax imposed upon the right to transact business within this state, or a regulatory license fee demanded under the police power. Indeed, it is no tax whatever on interstate commerce, or any instrumentality employed therein, except such as acquired a permanent taxable situs in this jurisdiction, and all courts hold that both tangible and intangible property so permanently located, although owned by a foreign interstate carrier engaged exclusively in interstate commerce, must bear its proportionate burden of the general taxes collected by the state for general public purposes, since the tax is imposed upon permanently situ-

ated and located property and not upon any right of the owner to so employ it. See domestic cases to the same effect cited in the notes to the sections of the statute supra.

We, therefore, conclude that the court erred in overruling the demurrer to plaintiff's petition and in granting the injunctive relief prayed for therein; and the judgment is reversed, with directions to set it aside and to sustain the demurrer to the petition, and for other proceedings not inconsistent with this opinion.

The whole court sitting.