Robert H. ALLPHIN, Commissioner of Revenue, and The Kentucky Tax Commission, by Robert H. Allphin, Chairman, and Jess B. Thomas, Member, Appellants,

v.

OHIO RIVER COMPANY, Appellee.

Court of Appeals of Kentucky.

June 21, 1957.

Rehearing Denied Nov. 15, 1957.

William S. Riley, Frankfort, for appellants.

James W. Stites, Louisville, for appellee.

CLAY, Commissioner.

This suit tests the constitutionality of Chapter 149 of the 1954 Acts of the General Assembly insofar as it seeks to impose a franchise tax on appellee, a foreign common carrier water transportation company. On appellee's motion for judgment on the pleadings, the trial court adjudged the attacked portions of the Act unconstitutional, and enforcement was enjoined.

Our first question is whether or not the Act violates Section 51 of the Kentucky

Constitution, which provides in part that "no law" shall be amended unless so much thereof as is amended be reenacted and published "at length".

Chapter 149 was entitled "An Act relating to property taxation". Insofar as pertinent here, it provided: "Subsection (1) of Section 136.120 of the Kentucky Revised Statutes is amended to read as follows: * *." Thereafter the entire *subsection* (1) was republished, the amendment simply adding a "common carrier water transportation company" as an additional designated organization required to "annually pay a tax on its franchise to the state and a local tax thereon to the county". Similarly *subsection* (3) of Section 136.160 was amended by republishing this entire subsection (3) and adding a "water transportation company" as one of those to which a particular formula would be applied "in fixing the value of the corporate franchise of such corporation liable for taxation in this state".

In substance the argument for the appellee company is that the reference in Section 51 of the Constitution to "law" means "section", and that a *subsection* of a statute cannot be amended without republication of the entire section of which it is a part.

In Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S.W. 1017, 1024, it was pointed out that the principal purpose of Section 51 was to insure that when an amendment was proposed the legislators would have before them the "whole of the law" so that the changes to be made would be clearly understood. Where *part of a section* is amended and only that part is published, some question may be raised as to whether or not the other parts of the section have been repealed. See Gibson v. Commonwealth, 204 Ky. 748, 265 S.W. 339. (New opinion delivered on petition for rehearing, Gibson v. Commonwealth, 209 Ky. 101, 272 S.W. 43.) It has been intimated that the amendment to a part of a section of the Kentucky statutes is an amendment of the entire section and consequently the entire section should be republished in the amending act. Hickman, Mayor v. Kimbley, 161 Ky. 652, 171 S.W. 176.

However, in Edrington v. Payne, 225 Ky. 86, 7 S.W.2d 827, 829, an amendment to an unnumbered paragraph of a section without republication of the remainder of the section was upheld. It was there decided that it was only necessary to set out "so much of the section as is revised or amended". The basis of the decision seems to be that there could be no uncertainty as to what was amended. The reasoning in this opinion is rather elusive, and there was a strong dissent. However, though in the dissenting opinion "law" was defined to mean "the entire act", the dissent apparently recognized that a *subsection* could constitute a sufficient statutory unit under Section 51 of the Constitution.

In Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232, 235, it was noted that the paragraph considered in the preceding case had actually been published in the statute books as a separate section, and in effect we approved the amendment of a *subsection* by publication of the entire subsection provided it "is sufficient in and of itself so that it in fact constituted a law".

An examination of the two subsections amended by Chapter 149 of the 1954 Acts convinces us that each rises to the dignity of a "law". The first amendment provides that certain public service companies shall pay an annual tax on their franchises. This constitutes the imposition of a specific tax upon a designated class. The meaning and effect of the subsection appears on its face, and it is a clearly comprehensible unit of legislation. To require the republication of the other lengthy subsections of this particular statute would serve no useful purpose. As a matter of fact, it would tend to obscure the purpose of the amendment. In our opinion the republication of this subsection constituted the publication of a law within the meaning of Section 51 of the Kentucky Constitution.

What we have said about the first amendment applies also to the second amendment, and it likewise conforms to the requirements of Section 51. The Act is therefore not unconstitutional on this ground.

Our next question is whether or not the Act violates the right of appellee to the free navigation of the Ohio River opposite the Kentucky shore. Like Marley's Ghost, the Northwest Ordinance of 1787 again appears on the scene to rattle its chains. In 1784 Virginia had ceded to the United States "the territory northwestward of the river Ohio". In 1787 the Congress of the Federation adopted "an ordinance for the government of the Northwest Territory". Among other things this Ordinance provided that:

"The navigable waters leading into the Mississippi and Saint Lawrence, * * * shall be common highways, and forever free, * * * without any tax, impost, or duty therefor."

In Economy Light Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847, it was held that insofar as this Ordinance established public rights of highway in navigable waters capable of bearing commerce from state to state, it constituted a regulation of commerce by Congress.

It is contended by appellants that since the Ordinance related to the territory northwestward of the Ohio River, the navigable water provision did not apply to that river. We do not deem it necessary to decide this question because we believe the "Compact with Virginia", admittedly applicable to the Ohio River, controls the issue we are called upon to decide.

■ The Compact with Virginia, enacted by the State of Virginia in 1789, provided among other things "that the use and navigation of the river Ohio, so far as the territory of the proposed State, or the territory which shall remain within the limits of this Commonwealth lies thereon, shall be free and common to the citizens of the United States * * *." Section 11. This Compact was "engrafted into the Constitution of Kentucky as a part of it." Beard v. Smith, 6 T.B.Mon. 430.

It is contended by appellee that, by virtue of the Virginia Compact, navigation on the Ohio is free, and the tax imposed by the Act in controversy is a tax *upon the right to use those navigable waters.* We believe that is the fundamental question before us. If the tax, regardless of its name, is in reality a tax upon the right to use the navigable waters of the Ohio River opposite the Kentucky shore, then it constitutes a burden which the Kentucky legislature has no power to impose.

As before mentioned, the Act levies a "franchise" tax upon appellee. Appellants (representing the Commonwealth and hereafter referred to as "Commonwealth") in their brief define it as "an ad valorem tax on intangible property". Just what is this *intangible property* upon which the tax is levied?

As found by the trial court, the following are the pertinent facts presenting the problem:

"Complainant (appellee) is a nonresident corporation engaged in the business of transporting freight for hire on the inland waterways of the Mississippi River System and the Intracoastal Canal; it owns no real, personal or mixed property situated in the State of Kentucky; it does not own, lease, operate or maintain any wharves, ties within the State, nor maintain any office or place of business therein; has no employees stationed in Kentucky, nor does it make any contracts or payments or receive any revenue within the State. It is not qualified to do business in, nor does it receive any privilege from Kentucky.

"Complainant's boats and barges navigate the inland waterways, including the Ohio River opposite the Kentucky shore as the exigencies of traffic, weather conditions, river stages and freight may require, and not upon fixed

schedules or between fixed points. There is no fixed movement of complainant's boats and barges within the limits of the Ohio River opposite the Kentucky shore.

"The great majority of complainant's business passing along the river Ohio opposite Kentucky does not touch at ports within the State of Kentucky, but passes from points above the Kentucky-West Virginia line to or from points beyond Cairo, Illinois, on the Mississippi, Missouri, or other waterways.

"None of complainant's boats or barges is permanently within the limits of Kentucky, nor does complainant perform any act in Kentucky other than to navigate the river Ohio within the concurrent jurisdiction of Kentucky and the states which may possess the opposite shores of said river."

It is evident from this statement of facts that appellee is not doing business in Kentucky and the Commonwealth does not so contend. It does not appear that the physical properties of the appellee are taxed under KRS 132.330. It is the Commonwealth's contention, however, that this tax is valid upon the same principles applied in upholding that statute in Reeves v. Island Creek Fuel and Transportation Co., 313 Ky. 400, 230 S.W.2d 924.

In the Reeves case the company was engaged in transporting coal on the Ohio River, principally between Huntington, West Virginia and Cincinnati, Ohio. It habitually, regularly and continuously operated its boats and barges along a regular route between these two cities. The tax imposed was a *tangible property* tax upon the boats and barges on the theory they had a *tax situs* in Kentucky. This tax was upheld and the Commonwealth insists that case is conclusive of the one before us.

It seems to us that the Reeves case is clearly distinguishable. There a tax was imposed upon the physical properties of the transportation company having a tax situs in Kentucky. Here we have no permanent-ly located physical properties which bring appellee under the taxing power of the state, nor do we have appellee doing business in the state so as to create a business situs of its intangible property here. Before the Reeves decision could be controlling on this record we must find appellee has taxable property within the state. In all of the cases cited for the Commonwealth, such as Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585; Shannon v. Streckfus Steamers, Inc., 279 Ky. 649, 131 S.W.2d 833; Bosworth v. Evansville & Bowling Green Packet Co., 178 Ky. 716, 199 S.W. 1059, 1060; and State Tax Commissioner v. Central Greyhound Lines, 252 Ky. 300, 67 S.W.2d 35, the controlling fact was that the company sought to be taxed either owned tangible property with a tax situs in Kentucky or carried on a business in Kentucky which gave its intangibles a situs here. This, of course, brings us back to the original proposition: Do appellee's operations in Kentucky establish a taxable business situs of its intangibles in this State?

We are not advised in the briefs exactly how the amount of this proposed franchise tax would be determined. However, we understand that it is substantially based upon the difference between the value of the company's tangible property and the value of its capital stock. Since the use of the Ohio River by appellee is the only activity in Kentucky which creates this intangible value allocable to Kentucky, the only intangible property in Kentucky subject to this tax is the value of the right to navigate the Ohio River.

That the law under consideration does in reality impose a tax on the right to navigate the Ohio River (insofar as appellee is concerned) seems clear from an examination of the two amendments in controversy. This so called "franchise" tax is levied upon any company "performing any public service", and the value of the franchise is measured by the mileage of the operation within this state. Under this law if appellee operated a single barge once a year the entire length of the Ohio River opposite

the Kentucky shore it would be subject to the franchise tax. Obviously the only intangible property *in Kentucky* being taxed would be the value of the right to navigate the Ohio River through this state.

 Had this tax been conditioned on appellee's doing business in Kentucky or having physical properties with a taxable situs here, then it would perhaps have been valid as a levy on a business otherwise within the taxing jurisdiction of the Commonwealth. However, the legislature cannot, simply by imposing a tax, thereby create a tax situs. See 143 A.L.R. 361. As applied to appellee, that is what Chapter 149 purports to do. The fatal feature of this law is that the only basis of the tax is the value of the right to navigate the Ohio River in Kentucky. If the State may exact a toll for the exercise of this right, then the navigation of this river is no longer free, and the terms of the Virginia Compact are violated.

Strangely enough, the original of the very statute we are considering was declared unconstitutional as applied to a foreign corporation engaged in substantially the same type of business as appellee. In Commonwealth v. Lee Line Company, 159 Ky. 476, 167 S.W. 409, this Court adjudged invalid the "franchise" tax on a steamboat company operating on the Ohio River, even though the company picked up and discharged passengers at ports in Kentucky. The tax was held to be an unlawful burden on interstate commerce. The Court said, 167 S.W. at page 410:

> "Where, as in this instance, a foreign corporation engaged in interstate commerce along navigable waters has no tangible property taxable in this state, it is difficult to escape the conclusion that the imposition of a franchise tax is, in effect, a tax both on the privilege of engaging in interstate commerce and on the right to navigate navigable waters lying between this and other states, and therefore a burden which the state has no right to impose."

Had we any doubt about the nature and effect of the franchise tax before us, this case is decisive of the question. (We are at a loss to understand why appellants did not discuss this case in their brief.)

We therefore conclude that the trial court reached the correct conclusion on the question of constitutionality.

The judgment declared Chapter 149 of the Acts of 1954 in its entirety to be unconstitutional and void and enjoined appellant Commissioner of Revenue from enforcing this law. It is our view that the order entered was broader in scope than was necessary or required by this record. The order should declare Chapter 149 unconstitutional insofar as it imposes a tax upon appellee, and appellant should be enjoined from enforcing or attempting to enforce its provisions against appellee.

The judgment is affirmed, with directions to modify the judgment consistent with this opinion.

CAMMACK and BIRD, JJ., dissent.