COMMERCIAL CARRIERS, INC., Appellant,

v.

KENTUCKY TAX COMMISSION et al.,
Appellees.

Court of Appeals of Kentucky.

Feb. 13, 1959.

James W. Stites, Carl L. Wedekind, Jr., Stites, Wood, Helm & Peabody, Louisville, for appellant.

William S. Riley, Frankfort, for appellees.

George M. Catlett, Frankfort, amicus curiae.

MILLIKEN, Judge.

State taxation of an interstate common carrier is involved here.

The judgment appealed sustains the right of the Commonwealth of Kentucky to impose a tax on the Kentucky "franchise" of the appellant, Commercial Carriers, Inc., a Michigan corporation, engaged solely in interstate commerce in the delivery of new automobiles to dealers within Kentucky and in passing through Kentucky en route to dealers in other states. The tax years involved are 1948 through 1952.

The appellant, which we shall call "Commercial," operates in Kentucky under a certificate of convenience and necessity issued by the Interstate Commerce Commission and a similar certificate from the Commonwealth which qualifies a vehicle of Commercial as an "irregular route common carrier truck—restricted to interstate commerce only." Commercial has no regular or scheduled deliveries to any points within Kentucky; its specially designed and familiar trailer-trucks traverse routes which are determined by the locations of the respective retail dealers and prevailing road conditions; the times of its de-

liveries to dealers in Kentucky are determined by the demands of the dealers and the availibility of new automobiles at the sources of supply—in Detroit, Toledo and Evansville. Commercial solicits no business from retailers and has no property in Kentucky except its trailer-trucks on the occasions when they enter or pass through the Commonwealth. All of the facts were stipulated by the litigants who agreed "that the sole question involved is one of the law."

The taxing statute, with which the Department of Revenue seeks to develop the appellant's activities, is KRS 136.120(1)— the franchise tax—which read in the years in question as follows:

"Every * * * common carrier trucking company * * * shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state and a local tax thereon to the county, incorporated city, town and taxing district wherein its franchise may be exercised."

The situation may be summarized and restated in this manner: The Commonwealth of Kentucky wishes to levy a franchise tax on Commercial, a foreign corporation, doing exclusively interstate business, *with no other property or activity within Kentucky, and operating only on irregular routes and in a sporadic manner.*

Commercial insists that a serious consideration of the agreed facts and the applicable law demonstrates clearly that its transient property has not acquired a taxable situs in Kentucky at large, nor within any county or taxing district; and Commercial further contends it exercises no franchise or privilege granted by Kentucky either within the state at large, or within any county or taxing district, and that the assessment of the tax and the manner of its allocation constitute a taking of Commercial's property without due process of law as prohibited by the Fourteenth Amendment of the Federal Constitution

and Section 14 of the Kentucky Constitution, and that such a tax is an undue burden on interstate commerce, contrary to the exclusive *authority* of the United States Congress to regulate interstate commerce, by virtue of Article I, Section 8, of the Federal Constitution.

It may be well to point out that the highway usage or weight tax KRS 281.810, has been paid by Commercial and is not involved here. To that extent Commercial is paying its way for its interstate business.

■ The assessment of a tax on the "franchise" of Commercial is an attempt to reach the added value of assets of Commercial in Kentucky derived from the fact that Commercial is an operating or going concern. This so-called franchise tax is not an excise tax, but has been adjudged to be an ad valorem property tax. Henderson Bridge Company v. Commonwealth, 99 Ky. 623, 631, 31 S.W. 486, 29 L.R.A. 73, affirmed 166 U.S. 150, 17 S.Ct. 532, 41 L.Ed. 953; Consolidation Coal Company v. Martin, 6 Cir., 113 F.2d 813. For such a property tax to be valid, the property taxed must have a situs within the taxing unit. 51 Am.Jur., pages 472, 473 and 474; Standard Oil Company v. Commonwealth ex rel. Allphin, Ky., 311 S.W.2d 372. The Department has invoked the principle originating in Pullman's Palace-Car Company v. Commonwealth of Pennsylvania, 1891, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613, where, in such multi-state businesses as railroads, barge lines (Ott v. Mississippi Valley Barge Line Company, 1949, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585), and bus lines (State Tax Commission v. Central Greyhound Lines, 252 Ky. 300, 67 S.W.2d 35), the total property of the respective taxpayers is valued as a unit and the taxing state permitted to levy on a fairly ascertained portion thereof as if the property were permanently located within the state. But such an attempt by the taxing authority assumes the situs of the property to be established, an assumption which we do not believe is sup-

ported by the facts in the case at bar. It is true that Commercial's vehicles travel many miles within the state during a year and will escape the incidence of this particular tax unless the Department's efforts are sustained by this Court, but it is equally true that the trips are not scheduled either as to time, route or number. The mileage traversed in any one year by Commercial in Kentucky is ascertainable and can be compared to the total mileage traversed, but we still would not have the continuity essential to create the *permanency* which in turn is necessary to establish the situs which would justify the application of the railroad and barge line doctrine aforesaid. Commonwealth v. Union Pacific R. Company, 214 Ky. 339, 283 S.W. 119, 49 A.L.R. 1091. In Northwest Airlines v. State of Minnesota, 1949, 322 U.S. 292, 64 S.Ct. 950, 953, 88 L.Ed. 1283, the Supreme Court commented through Mr. Justice Frankfurter on this dilemma:

"Surely the situs which personal property may acquire for tax purposes in a State other than that of the owner's domicile cannot be made to depend on some undefined concept of 'permanence' short of a tax year, leaving the adequate size of the fraction of the tax year for judicial determination in each year. Such a doctrine would play havoc with the tax laws of the forty-eight states. It would multiply manifold the recognized difficulties of ascertaining the domicile of individuals."

Regardless of whether the present tax is considered an ad valorem tax on intangible property (the added value of continuous operation), or an excise tax on a privilege of some sort, it seems to us that the facts of the present case compel the conclusion that the incidence of the tax, under whatever guise, falls squarely on interstate commerce. Out of the facts comes the law. Here there is no local activity which supplies the basis for justifying the tax as an indirect burden on interstate commerce. In fact, this tax falls as directly on interstate commerce as it possibly could fall; there is nothing else here for it to fall on.

Under whatever guise the tax is levied, whether as a property tax or as an excise, the trend of controlling opinions, it seems to us, indicates that the Supreme Court of the United States will not permit a state to tax a foreign corporation, engaged exclusively in the interstate transportation of freight, on the privilege of doing business even though the tax is nondiscriminatory and is apportioned to business done within the state. In Spector Motor Service v. O'Connor, 1951, 340 U.S. 602, 71 S.Ct. 508, 511, 95 L.Ed. 573, where Connecticut imposed a tax upon the franchise of foreign corporations exclusively for the privilege of doing interstate business within the state, the Court said:

"The tax does not discriminate between interstate and intrastate commerce. Neither the amount of the tax nor its computation need be considered by us in view of our disposition of the case. The objection to its validity does not rest on a claim that it places an unduly heavy burden on interstate commerce in return for protection given by the State. The tax is not levied as compensation for the use of highways or collected in lieu of an ad valorem property tax. Those bases of taxation have been disclaimed by the highest court of the taxing State. It is not a fee for an inspection or a tax on sales or use. It is a 'tax or excise' placed unequivocally upon the corporation's franchise for the privilege of carrying on exclusively interstate transportation in the State. * *

" * * * It is not a matter of labels. The incidence of the tax pro-

vides the answer. The courts of Connecticut have held that the tax before us attaches solely to the franchise of petitioner to do interstate business. * * *

"This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was *exclusively* interstate in character."

Subsequent decisions of the Supreme Court suggest a marked tendency to limit "local activity" taxes by concluding that the so-called local activities are really within the flow of interstate commerce and not separable therefrom. Michigan-Wisconsin Pipe Line Company v. Calvert, 1954, 347 U.S. 157, 159, 74 S.Ct. 396, 98 L.Ed. 583; Railway Express Agency v. Commonwealth of Virginia, 347 U.S. 359, 74 S. Ct. 558, 98 L.Ed. 337; 41 A.B.A.J. 603 (1955). The Supreme Court of Pennsylvania held likewise in Roy Stone Transfer Company v. Messner, 1954, 377 Pa. 234, 103 A.2d 700; Commonwealth v. Eastman Kodak Company, 1956, 385 Pa. 607, 124 A.2d 100.

We do not find it necessary to discuss the awkward problem of apportionment of the revenue of the proposed tax among the governmental units "wherein its franchise may be exercised" as required by statute, i. e., KRS 136.120(1), for we have concluded, as indicated, that the levy offends the concept of due process of law in both the State and Federal Constitutions because the property involved has no situs in Kentucky, and we conclude also that the attempted levy violates the Commerce Clause of the Federal Constitution, Article I, Section 8, as a direct burden on interstate commerce.

The judgment is reversed.