UNION BARGE LINE CORPORATION,
Appellant,

v.

James V. MARCUM, etc., Appellee.

AMERICAN BARGE LINE COMPANY,
Appellant,

v.

James V. MARCUM, etc., Appellee.

MISSISSIPPI VALLEY BARGE LINE
COMPANY, Appellant,

v.

James V. MARCUM, etc., Appellee.
Consolidated Cases

Court of Appeals of Kentucky.

June 22, 1962.

Rehearing Denied Oct. 5, 1962.

James W. Stites, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Wm. S. Riley, Asst. Atty. Gen., Francis D. Burke, Frankfort, for appellee.

CLAY, Commissioner.

These three cases in which a declaration of rights was sought continue a controversy concerning the right of the Commonwealth to impose a franchise tax on appellant barge line companies. They are foreign corporations engaged in interstate commerce. The trial court adjudged in effect that the Commonwealth had made a prima facie showing that appellants' boats and barges have a taxable situs in Kentucky which would justify the levy of a franchise tax based on an aliquot portion thereof. No assessment has been made but appellants were required by the judgments to supply necessary reports and data to the Kentucky Department of Revenue upon which a tax liability could be ascertained.

The proceedings in these cases and the judgments are sequential to our decision in Allphin v. Ohio River Company, Ky., 306 S.W.2d 94. In that case we held that KRS 136.120 was unconstitutional to the extent it purported to impose a franchise tax upon a foreign common carrier water transportation company based upon the value of the right to navigate the Ohio River through this state. In that opinion we pointed out that if the tax was conditioned upon the company's doing business in Kentucky or having physical properties with a taxable situs here, such tax would perhaps be valid.

Following that decision the Commonwealth examined appellants' books to determine the nature and extent of their operations on what are described as "Kentucky waters". This investigation disclosed a considerable business was conducted by appellants in picking up and discharging cargo at Kentucky ports on the Ohio River, and that a substantial percentage of their ton-mile interstate operations was in this state. Based on these findings the trial court concluded as a matter of law that "the frequent and continuous use of plaintiffs' boats and barges within the jurisdiction and territorial limits of the Commonwealth of Kentucky" supported a determination that an aliquot portion thereof had a taxable situs in Kentucky and in the counties in which appellants operate. The parties apparently agree that the "franchise" tax involved is an ad valorem tax upon the added value of physical properties of a going concern which are located in Kentucky.

The basic contention of appellants is that no taxable situs of its tangible property (upon which the franchise tax rests) can properly be found to exist in this state because appellants' operations do not conform to a "system" which would sustain a finding of "permanence" in the location of any part of their fleets in Kentucky. This contention is founded on the fact that the operations are not upon fixed schedules or between fixed points and are subject to the exigencies of traffic, weather conditions, river stages and amount of freight to be transported. It is maintained the movement of their boats and barges on the Ohio River may be classified as casual and sporadic, lacking the character of continuity and permanence which would create a tax situs.

Suggesting that it may somehow resolve the principal issue, appellants stress the proposition that by virtue of the commerce clause of the United States Constitution, the Virginia Compact and the Northwest Ordinance, the *navigation* of the Ohio River shall be free from any tax, impost or duty. Such was recognized in Allphin v. Ohio River Company, Ky., 306 S.W.2d 94, wherein we held an attempt to tax that *right* or *privilege* would impose an unauthorized burden on interstate commerce.

That problem is no longer involved in these cases.

■ The proposed tax is not upon the right or privilege of appellants to navigate the Ohio River or to engage in interstate commerce thereon. It is based upon the presence and use of physical facilities within this state and subject to its jurisdiction. Long ago the United States Supreme Court decided that a tax on tangible property moving in and out of a state is not a tax on or because of transportation or the right of transit. Pullman's Palace-Car Company v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613.

■ A Kentucky case confirming this principle is State Tax Commission v. Central Greyhound Lines, 252 Ky. 300, 67 S.W. 2d 35. Neither the Virginia Compact nor the Northwest Ordinance impairs the power of Kentucky to impose taxes on property used on the Ohio River. Reeves v. Island Creek Fuel & Transportation Co., 313 Ky. 400, 230 S.W.2d 924. The right of navigation is not here involved. Consequently the case of Commonwealth v. Lee Line Co., 159 Ky. 476, 167 S.W. 409, upon which appellants rely, is not pertinent to the real issue before us.

The difficult problem is to determine whether a proportionate part of appellants' boats and barges, as tangible property, has a tax situs in this state. The development of the law with respect to the taxability of movable property of a transportation enterprise, flowing through different states, has been devious indeed. See Roy Stone Transfer Corp. v. Messner, 377 Pa. 234, 103 A.2d 700. The most serviceable anchor to windward has been the concept that benefits or protection conferred or afforded a foreign corporation by a particular state furnishes a proper constitutional basis for properly apportioned taxation by such state. See Northwest Airlines v. Minnesota, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283; Ott v. Mississippi Valley Barge Line, Inc., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585.

A solid basis for taxation is of course the fixed and permanent location of specific tangible property within a state. The extension of this theory to floating property is obviously a tenuous one. It has made necessary the development of this concept: a sufficient number of similar moving tangible properties continuously used in an interstate transportation enterprise may create such an identifiable flow of such properties through a state that it may rightfully freeze a fair portion of that flow into a taxable situs. That this is a sort of legal legerdermain must be acknowledged. Appellants, however, do not challenge the theory. They simply say their operations do not fall within it.

■ The *nature* and *extent* of interstate transportation operations have been the controlling factors in determining whether a particular state may levy a tax upon transient property. We may assume that casual, or sporadic, or occasional movements of the implements of a transportation enterprise into and out of a state do not furnish a sufficient nexus or link between a local taxing power and a foreign corporation. The solution of the problem is really a practical one. If such movements are sufficiently substantial, continuous and constant, then the state necessarily furnishes such benefits and protection as will warrant its demand for a quid pro quo by way of a fairly apportioned tax. See Braniff Airways, Inc. v. Nebraska, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967.

Appellants contend that their operations do not constitute a definable "system", nor do they have a "permanence", which are criteria mentioned in some of the cases. These words have no technical legal significance but are simply descriptive of certain facets of an enterprise which would justify the imposition of a tax. Even if they had the importance contended for by appellants, it could be said that the methods of operation shown in this record indicate both a system and a permanency. The fact that because of the nature of the business

appellants do not operate their boats and barges on a fixed schedule does not necessarily mean that there is not a systematic utilization of Kentucky territory (i. e., the waterways); nor does the lack of a fixed schedule or the fact that the exigencies of traffic affect the scope of operations necessarily mean that such operations are of a nonpermanent nature.

■ Appellants conduct a substantial, regular and continuous business through Kentucky. The general route is fixed. The absence of specific schedules simply makes more difficult the determination of a fair apportionment, but it does not negative an habitual and continuous use of Kentucky territory. As said in Ott v. Mississippi Barge Line, 336 U.S. 169, 174, 69 S.Ct. 432, 434, 93 L.Ed. 585, 589:

"The problem under the Commerce Clause is to determine 'what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions.' Nashville, C. & St. L. R. Co. v. Browning, 310 U.S. 362, 365, 60 S.Ct. 968, 970, 84 L.Ed. 1254. So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State. See Wisconsin v. J. C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267. Those requirements are satisfied if the tax is fairly apportioned to the commerce carried on within the State."

The practical application of the principal is thus spelled out in Johnson Oil Refining Co. v. State of Oklahoma ex rel. Mitchell, 290 U.S. 158, 160, 54 S.Ct. 152, 154, 78 L.Ed. 238, 242:

"The basis of the jurisdiction is the habitual employment of the property within the state. By virtue of that employment the property should bear its fair share of the burdens of taxation to which other property within the state is subject. When a fleet of cars is habitually employed in several States— the individual cars constantly running in and out of each State—it cannot be said that any one of the states is entitled to tax the entire number of cars regardless of their use in the other states. When individual items of rolling stock are not continuously the same but are constantly changing, as the nature of their use requires, this Court has held that a state may fix the tax by reference to the average number of cars found to be habitually within its limits."

■ This principle was applied by this Court in State Tax Commission v. Central Greyhound Lines, 252 Ky. 300, 67 S.W.2d 35, and recognized in Reeves v. Service Lines, Inc., 291 Ky. 410, 164 S.W.2d 593. It thus appears settled that a fixed number of units of transient property, constituting an average number of those continuously used in the state, may be the subject of ad valorem taxation even though none of the units involved are permanently located in Kentucky.

■ Water transportation by boats and barges is on the same constitutional footing as other interstate enterprises employing other transportation instrumentalities. Ott v. Mississippi Barge Line, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585. We therefore reach the conclusion that the tangible property used in appellants' operations falls within the scope of permissible taxation by the Commonwealth, and the trial court correctly so adjudged.

We have examined appellants' other contentions and find them without merit. It must be borne in mind that no franchise tax of any kind has yet been levied on appellants. Any improper assessments may be contested but are not involved in these lawsuits.

The judgments are affirmed.