RENDERED: JUNE 25, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0331-MR

AIRBNB, INC.                                                 APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2025-CA-0130
FRANKLIN CIRCUIT COURT NO. 23-CI-01086

HONORABLE THOMAS D. WINGATE                    APPELLEE
JUDGE, FRANKLIN CIRCUIT COURT

AND

KENTUCKY LEAGUE OF CITIES, INC.       REAL PARTIES IN INTEREST/
AND KENTUCKY TRAVEL INDUSTRY                    APPELLEES
ASSOCIATION, INC.

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>REVERSING AND REMANDING</u>**

Airbnb, Inc., appeals from an order of the Court of Appeals denying its petition for a writ to prohibit the Franklin Circuit Court from proceeding upon a declaratory judgment action filed by Kentucky League of Cities, Inc. ("League"), and Kentucky Travel Industry Association, Inc. ("Association"). The primary question presented by this appeal is whether the League and Association have constitutional standing to seek a judicial declaration that Airbnb is subject to various local transient room taxes enacted pursuant to

KRS[1] 91A.390. Having carefully considered the law, record, and briefs, we reverse the order of the Court of Appeals and remand with directions to issue the requested writ.

## I. FACTS AND PROCEDURAL HISTORY

### A. Parties.

Airbnb is a Delaware corporation with a principal place of business in San Francisco, California, and is organized to provide an internet-based platform through which owners of lodging accommodations and individuals seeking to rent accommodations can locate each other and directly arrange for the rental of lodging. Airbnb disclaims any ownership, control, management, or rights to any accommodation listed on its platform.

The League is a Kentucky non-profit corporation organized to provide various services to its member cities, including advocacy for beneficial legislation on matters of municipal interest. Similarly, the Association is a Kentucky non-profit corporation whose membership is composed of tourist and convention commissions from across the Commonwealth. The League and Association claim to have standing to pursue a declaratory judgment action against Airbnb on behalf of their respective member cities and commissions based on Airbnb's alleged failure to remit local transient room taxes.

---

[1] Kentucky Revised Statutes.

## B. Legal Background.

Section 181 of the Kentucky Constitution authorizes the General Assembly to delegate the sovereign power of taxation to local governments and provides as follows:

> The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes. The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions. And the General Assembly may, by general laws only, authorize cities or towns of any class to provide for taxation for municipal purposes on personal property, tangible and intangible, based on income, licenses or franchises, in lieu of an ad valorem tax thereon: Provided, Cities of the first class shall not be authorized to omit the imposition of an ad valorem tax on such property of any steam railroad, street railway, ferry, bridge, gas, water, heating, telephone, telegraph, electric light or electric power company.

KRS 91A.350 permits local governing bodies to establish tourist and convention commissions to promote convention and tourist activity. To fund the commissions, the legislature has authorized local governing bodies to impose a transient room tax for the rent of various types of lodging and other accommodations. KRS 91A.390. Prior to 2022, the scope of the transient room tax was limited to the provision of physical on-site accommodations. *City of Bowling Green v. Hotels.com, L.P.*, 357 S.W.3d 531, 533 (Ky. App. 2011) (citing *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381 (6th Cir. 2009)). However, during the 2022 regular session, the General

3

Assembly enacted H.B. 8, which amended KRS 91A.390 to broaden the scope of the transient room tax in pertinent part as follows:

> (1) (a) The commission shall annually submit to the local governing body or bodies which established it a request for funds for the operation of the commission.
>
> (b) The local governing body or bodies shall include the commission in the annual budget and shall provide funds for the operation of the commission by imposing a transient room tax on the rent for every occupancy of a suite, room, rooms, cabins, lodgings, campsites, or other accommodations charged by any hotel, motel, inn, tourist camp, tourist cabin, campgrounds, recreational vehicle parks, or any other place in which accommodations are regularly furnished to transients for consideration or **by any person that facilitates the rental of the accommodations by brokering, coordinating, or in any other way arranging for the rental of the accommodations** . . .

(Emphasis added). Additionally, KRS 91A.390(1)(e) sets forth the mechanism for enforcement of the local transient room tax and states, "[t]he local governing body or bodies that have established a commission by joint or separate action shall enact an ordinance for the enforcement of the tax measure enacted pursuant to this section and the collection of the proceeds of this tax measure on a monthly basis."

### C. Declaratory Judgment Action and Writ Proceedings.

On December 1, 2023, the League and Association filed a declaratory judgment action on behalf of certain member cities and commissions seeking an adjudication that:

> (1) Airbnb is an entity which 'facilitates the rental . . . of accommodations . . . by brokering, coordinating or in any other way arranging for the rental of the accommodations'; and (2) that as a result, and as authorized by KRS § 91A.390(b), Kentucky cities, their tourism boards or commissions, and others designated to collect for them, may enforce their own local transient tax

4

ordinances that mirror the language of KRS § 91A.390 and collect from Airbnb all local transient taxes owed to them."

In response, Airbnb filed a motion to dismiss on various grounds, including lack of constitutional standing. Particularly, Airbnb argued the League and Association could not establish standing on behalf of their respective members.

Confronted with the motion to dismiss, the League and Association requested and obtained leave to file an amended complaint. In the amended complaint, the League and Association identified 37 city governments and 8 city-county commissions that have enacted ordinances for the enforcement of the local transient room tax authorized by KRS 91A.390. Additionally, the amended complaint contained specific allegations relative to alleged injuries caused by the failure of Airbnb to remit local transient room taxes to the Kentucky cities of Berea, Elizabethtown, and Murray. The League and Association ultimately sought a declaration:

> (1) Airbnb is "a person that facilitates the rental of the accommodations by brokering, coordinating or in any other way arranging for the rental of the accommodation" under KRS § 91A.390; and

> (2) that as a "person who facilitates the rental of the rental of the accommodations by brokering, coordinating or in any other way arranging for the rental of the accommodation", Airbnb is among those entities who are responsible to pay local transient room taxes for short term rentals it actually facilitates or brokers under local ordinances which conform to KRS § 91A.390.

Airbnb renewed its motion to dismiss for lack of standing, which the trial court denied in an order entered on November 27, 2024. The trial court determined the League and Association had established associational standing on behalf of their members because there was a justiciable "controversy over

5

Airbnb's obligation to pay" the local taxes that the member cities would have had standing to pursue in their own right. The trial court further concluded the League and Association were "not seeking to 'step into the shoes' of a governing body, or assess or collect taxes."

On December 23, 2024, Airbnb filed an answer and counterclaim seeking a declaration that the local transient room tax under KRS 91A.390 violated due process and constituted an undue burden on interstate commerce. Subsequently, on January 30, 2025, Airbnb filed a petition for writ of prohibition and mandamus in the Court of Appeals to prohibit the trial court from proceeding with the action for lack of jurisdiction and standing. The Court of Appeals denied the requested writ in an order entered on July 10, 2025. This appeal followed.

## II. LAW AND ANALYSIS

### A. Extraordinary Writ Standard.

The extraordinary remedies of mandamus and prohibition "are two sides of the same coin." 55 C.J.S. *Mandamus* § 4 (2025). "From time immemorial, a writ of *mandamus* has been available to compel a public officer to perform a ministerial duty[.]" *Hamblen ex rel. Byars v. Kentucky Cab. for Health & Fam. Servs.*, 322 S.W.3d 511, 517 (Ky. App. 2010). By contrast, the purpose of a writ of prohibition "is to stop some action which is threatened by or is being proceeded with by an inferior court." *Stafford v. Bailey*, 191 S.W.2d 218, 219 (Ky. 1945).

6

A petition for writ of mandamus or prohibition constitutes "[o]riginal proceedings in an appellate court [which] may be prosecuted only against a judge or agency whose decisions may be reviewed as a matter of right by that appellate court." RAP[2] 60(A). The standard for granting a writ of mandamus and a writ of prohibition is the same. *Barnes v. Goodman Christian*, 626 S.W.3d 631, 633 n.1 (Ky. 2021) (citing *Mahoney v. McDonald-Burkman*, 320 S.W.3d 75, 77 (Ky. 2010)). Such extraordinary relief

> *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). Thus, "[w]e recognize two classes of writ, the first where a court is acting outside of its jurisdiction and the second where that court is acting within its jurisdiction, but in error." *Lynch v. Commonwealth*, 718 S.W.3d 726, 732 (Ky. 2025). Additionally, our precedents have developed an exception to the requirements of a second-class writ which authorizes a court, "in certain special cases," to

> entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration.

---

[2] Kentucky Rules of Appellate Procedure.

*Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 616 (Ky. 2005) (quoting

*Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)).

To describe extraordinary relief as disfavored under Kentucky law is

"something of an understatement[.]" *Powell v. Graham*, 185 S.W.3d 624, 627

(Ky. 2006). Our caselaw requires

> a significant showing for a writ even to be *available* in a given case
> because extraordinary writs inherently intrude into the workings of the
> lower courts and bypass the normal appellate process. Even in those
> rare cases when a writ is available as a remedy, the court originally
> hearing the petition retains its discretion to grant or deny the writ after
> examining the merits.

*Id.* Moreover,

> [t]he expedited nature of writ proceedings necessitates an
> abbreviated record. This magnifies the chance of incorrect rulings
> that would prematurely and improperly cut off the rights of
> litigants, if the process were not strictly scrutinized for
> appropriateness. As such, the specter of injustice always hovers
> over writ proceedings, which explains why courts of this
> Commonwealth are—and should be—loath to grant the
> extraordinary writs unless absolutely necessary. Because they fall
> outside the regular appellate process, especially when they are
> used as de facto interlocutory appeals (an increasing, undesired
> trend), writ petitions also consume valuable judicial resources,
> slow down the administration of justice (even when correctly
> entertained), and impose potentially unnecessary costs on
> litigants.

*Cox v. Braden*, 266 S.W.3d 792, 795 (Ky. 2008).

### B. First-class Writ is Available to Remedy Lack of Constitutional standing.

Airbnb first argues it is entitled to a first-class writ because the trial

court is acting outside its jurisdiction. Specifically, Airbnb contends the

League and Association lack constitutional and associational standing to pursue this declaratory judgment action. We agree.

At the outset, the League and Association dispute the availability of a first-class writ to remedy an alleged lack of constitutional standing. As noted by the Court of Appeals below, this Court has not definitively addressed the relationship between constitutional standing and subject-matter jurisdiction in the context of a writ proceeding.

In our writ jurisprudence, the term "'jurisdiction' refers not to mere legal errors but to subject-matter jurisdiction . . . which goes to the court's core authority to even hear cases." *Lee v. George*, 369 S.W.3d 29, 33 (Ky. 2012) (internal citation omitted). Ordinarily, "[w]hether a court has subject-matter jurisdiction is determined at the beginning of a case, based on the type of case presented." *Commonwealth v. Steadman*, 411 S.W.3d 717, 722 (Ky. 2013). In other words, "[g]eneral subject-matter jurisdiction 'refers to a court's authority to determine 'this kind of case' (as opposed to 'this case')." *Id.* (citing *Commonwealth v. Griffin*, 942 S.W.2d 289, 290 (Ky. 1997)). Subject-matter jurisdiction differs from particular-case jurisdiction which refers to a court's power to hear a specific case as opposed to a type of case. *Id.*

At a fundamental level, the concept of constitutional standing serves "as a predicate for a court to hear a case[.]" *Commonwealth, Cabinet for Health & Fam. Servs., Dep't. for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 192 (Ky. 2018). Constitutional standing, "in its most basic sense, refers to an integral component of the 'justiciable cause'

9

requirement underlying the trial court's jurisdiction." *Lawson v. Office of Att'y. Gen.*, 415 S.W.3d 59, 67 (Ky. 2013) (citing KY. CONST. § 112; *Rose v. Council for Better Educ.*, 790 S.W.2d 186 (Ky. 1989)). Thus, "[s]tanding must be addressed as a threshold matter because 'all Kentucky courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only *justiciable causes* proceed in court, because the issue of constitutional standing is not waivable.'" *City of Pikeville v. Kentucky Concealed Carry Coal., Inc.*, 671 S.W.3d 258, 263 (Ky. 2023) (quoting *Sexton*, 566 S.W.3d at 192) (footnote omitted).

"If a plaintiff fails to establish constitutional standing, the case should be dismissed for lack of subject-matter jurisdiction." *Id.* at 264 (citing *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 Fed. App'x. 6, 11 (6th Cir. 2018)). Consequently, as a general matter, extraordinary relief "is available where the petitioner challenges the subject-matter jurisdiction of the trial court based on the plaintiff's alleged lack of [constitutional] standing to bring the lawsuit." 55 C.J.S. *Mandamus* § 93 (2025).

Citing *Sexton*, the League and Association assert, as a matter of logic, that an extraordinary writ cannot be available to remedy an alleged lack of constitutional standing because Kentucky caselaw does not permit an immediate, interlocutory appeal from a trial court's ruling on this issue. We disagree.

Extraordinary writs are neither a substitute for, nor the equivalent of, an appeal. *Nat'l Gypsum Co. v. Corns*, 736 S.W.2d 325, 326 (Ky. 1987). Instead,

10

"each case must stand on its own merits" within the framework of our specific jurisprudence on mandamus and prohibition. *Powell*, 185 S.W.3d at 627 (quoting *Buckley v. Wilson*, 177 S.W.3d 778, 780 (Ky. 2005)). Simply put, the availability of an appeal, or lack thereof, does not preclude the issuance of a first-class writ. *Hoskins*, 150 S.W.3d at 10. We further explained:

> If it be true that the Fayette court is proceeding without jurisdiction, it is not substantial justice that it should be allowed to take the bodies of the complainants, confine them in jail without bail, as it might do at its discretion, subject the parties to enormous expense in defending the case, even if it went no further than a trial of the question of jurisdiction, and say to them, "Your remedy is solely by appeal if you have been wronged." We think [Section 110] of the Constitution, though it be deemed only declaratory of the common law on the subject, confers the power and jurisdiction on this court to intervene by the writ of prohibition to stay the inferior courts of the state from proceeding out of their jurisdiction. **It may issue whether or not there is an appeal.**

*Id.* (quoting *Hargis v. Parker*, 85 S.W. 704, 706 (Ky. 1905) (emphasis added).

Similarly, the argument of the League and Association based on statutory standing principles under *Goff v. Edwards*, 653 S.W.3d 847, 854 (Ky. 2022), is misplaced in the context of the relationship between constitutional standing and subject-matter jurisdiction. *City of Pikeville*, 671 S.W.3d at 267 ("[T]he existence of statutory standing does not equate to the constitutional standing required to establish judicial subject-matter jurisdiction."). We are convinced a first-class writ is available to remedy an alleged lack of constitutional standing.

11

## C. The League and Association Lack Standing.

Having determined a first-class writ is available to remedy an alleged lack of constitutional standing, we turn to the merits of Airbnb's claim that the League and Association lack constitutional standing. *Davis v. Wingate*, 437 S.W.3d 720, 724 (Ky. 2014). The applicable standard of review on appeal from the grant or denial of a writ is determined by "[i]dentifying the class of writ presented[.]" *Id.*

A first-class writ is reviewed de novo. *Id.* at 724-25; *see also Overstreet v. Mayberry*, 603 S.W.3d 244, 251 (Ky. 2020) (holding constitutional standing issues are subject to de novo review). "Under the de novo standard, we owe no deference to the legal conclusions of the lower courts." *Dunn v. Solomon Found.*, 723 S.W.3d 711, 724 (Ky. 2025).

In Kentucky, the test for constitutional standing has been articulated as follows:

> [F]or a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . ." "The injury must be . . . 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.'" "The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision."

*Sexton*, 566 S.W.3d at 196 (footnotes omitted).

By extension, "[i]n certain cases, an association may establish standing to assert a claim on behalf of its members despite the lack of an injury to the association, itself." *City of Pikeville*, 671 S.W.3d at 264. The Supreme Court of the United States has identified three requirements for an association to demonstrate standing in federal court:

> (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 334 (1977). "While not adopting the entire *Hunt* test, this Court has held 'at least the first requirement must apply.'" *City of Pikeville*, 671 S.W.3d at 264 (quoting *Bradley v. Commonwealth ex rel. Cameron*, 653 S.W.3d 870, 879 (Ky. 2022). "Thus, in Kentucky, an association may have standing to assert a claim on behalf of its members 'only if its members could have sued in their own right.'" *Id.* (quoting *Bradley,* 653 S.W.3d at 879).

> To establish associational standing, a party must
>
> must specifically identify the member whose alleged injury the association seeks to vindicate through judicial proceedings. Indeed, "[i]n cases where the harm is specific, the proof of standing must be equally specific." "[S]tanding cannot be inferred argumentatively from averments in the pleadings . . . but rather must affirmatively appear in the record."

*Id.* at 265 (internal citations omitted). Moreover, "[t]he quantum of proof necessary to establish associational standing depends on the stage of the proceeding[.]" *Id.*

13

For example, we have described the applicable evidentiary requirements

as follows:

> "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." At the pleading stage, less specificity is required. At that point, an association may speak generally of the injuries to "some" of its members, for the "presum[ption] [is] that general allegations embrace those specific facts that are necessary to support the claim." By the summary judgment stage, however, more particulars regarding the association's membership must be introduced or referenced. Finally, before a favorable judgment can be attained, the association's general allegations of injury must clarify into "concrete" proof that "one or more of its members" has been injured. "By refus[ing] to come forward with any such showing," any claim to associational standing, and the potential for success on the merits is forfeited.

*Commonwealth ex rel. Brown v. Interactive Media Entn't. & Gaming Ass'n, Inc.*,

306 S.W.3d 32, 39-40 (Ky. 2010) (internal citations omitted).

Notably, the development of the constitutional standing doctrine "has

been very much tied to litigation asserting the illegality of governmental

action." Edward H. Cooper, 13A *Fed. Prac. & Proc. Juris. (Wright & Miller)* §

3531 (3d ed. 2025). In the seminal modern decision on constitutional

standing, the Supreme Court further explained:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or

14

regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992) (internal citations omitted). Additionally, "[c]laims of private wrongdoing ordinarily are asserted by persons obviously having the enforceable interest, if anyone has; such problems as arise commonly are handled in terms of defining private causes of action or of identifying the real party in interest." *Cooper*, 13A *Fed. Prac. & Proc. Juris.* at § 3531.

By contrast, in the present matter, it is far from certain that the relationship between the League and Association and their members has any legitimate connection to the subject matter of this litigation. Specifically, the declaratory judgment action underlying the present appeal involves a voluntary association purporting to establish the tax liability of a private party on behalf of various governmental entities.

In *Hunt*, the Supreme Court held that associational standing is limited to voluntary member organizations "in the traditional trade association sense[.]" 432 U.S. at 344. Clearly, the vindication of governmental taxing authority is not a function of a traditional voluntary membership organization. Moreover,

15

the judicial determination of a private party's tax liability is not germane to the League's stated purpose of "advocating before the Kentucky General Assembly for legislation which is beneficial to municipal interests[.]"[3] The connection between an association's purpose and the specific interests it seeks to protect implicates the core tenet of the constitutional standing doctrine which "ensures that the disputes resolved by courts today are the same kinds of disputes 'traditionally amenable to, and resolved by, the judicial process.'" *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 536-37 (6th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)).

Thus, the unusual procedural posture of the disputed claims underlying the present appeal distinguishes our precedents on constitutional and associational standing in *Sexton*, 566 S.W.3d at 196, and *City of Pikeville*, 671 S.W.3d at 264, and further contravenes the general rule that a private litigant lacks standing to assert a governmental interest in court. *Hollingsworth v. Perry*, 570 U.S. 693, 707-08 (2013); *Killeen v. Wayne Cnty. Civil Serv. Comm'n*, 310 N.W.2d 257, 259-60 (Mich. Ct. App. 1981) ("Public grievances must be brought into court by public agents and not by private intervention."); *see also Cooper*, 13B *Fed. Prac. & Proc. Juris.* at § 3531.11 ("The question whether suit can be brought in the name of the government, or by public officials, springs

---

[3] Although this Court has not officially adopted the second prong of the *Hunt* test relative to the necessary connection between an association's purpose and the subject matter of the litigation, we conclude the test is persuasive here for illustrative purposes.

naturally from the conclusion that ordinarily citizens and taxpayers do not have standing as such to litigate in the public interest.").  Moreover, questions involving whether a plaintiff may properly assert a claim on behalf of the government cannot be answered solely "by invoking the formulas propounded in private standing cases."  *Cooper*, 13B *Fed. Prac. & Proc. Juris.* at § 3531.11.

To properly frame the present standing issue, we must address the doctrine of governmental standing.  *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601-02 (1982).  The sovereign standing[4] of a governmental plaintiff concerns two basic interests:  "[f]irst, the exercise of sovereign power over individuals and entities within the relevant jurisdiction—this involves the power to create and enforce a legal code, both civil and criminal; second, the demand for recognition from other sovereigns—most frequently this involves the maintenance and recognition of borders."  *Id.* at 601.

State agencies and political subdivisions may also assert governmental standing in the appropriate case, "although a public entity that has little real authority may be denied standing."  *Cooper*, 13B Fed. Prac. & Proc. Juris. at § 3531.11.1.  Over a century ago, the Supreme Court explained the fundamental basis of governmental standing as follows:

> Every government, intrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general

---

[4] The present matter only involves sovereign standing.  However, governmental standing may also involve questions of proprietary, quasi-sovereign, and private interests.  *Id.*

17

welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court.

*In re Debs*, 158 U.S. 564, 584 (1895). In other words, "[t]here can be no doubt whatever that in its own courts and under its own law, a state has standing to enforce broad concepts of the public interest against individual defendants, whether through criminal or civil proceedings."

*Cooper*, 13B *Fed. Prac. & Proc. Juris.* at § 3531.11.1.

Under Kentucky law, the power of taxation is a sovereign power which can be exercised only by the Legislature, as provided by the Constitution. *Barrow v. Bradley, Mayor*, 190 Ky. 480, 227 S. W. 1016. The exercise of such power as here given by the Legislature is not inconsistent with our form of government, which recognizes the existence of local self-government, with the power in it to determine, in its discretion, the necessity of imposing the levy of a tax for purely municipal purposes. *McArthur v. Nelson*, 81 Ky. 67, 4 Ky. Law Rep. 754. The Legislature has large authority in determining the power and framework of local county government and its local institutions. Its power in this respect is limited by the Constitution only. *Mitchell v. Knox County Fiscal Court*, 165 Ky. 543, 177 S.W. 279.

The customary local powers given by our form of government to a county or other municipality is that of taxation for municipal purposes. Such taxation by a county is so inescapable and incident to our form of government that, so long as the form exists, the power of such local taxation cannot be abolished.

*Fox v. Bd. for Louisville & Jefferson Cnty. Children's Home*, 50 S.W.2d 67, 69-70 (Ky. 1932). Thus, "[i]t is a governmental function to impose taxes, and it is equally so to prescribe the method of their collection, and the penalties for

18

nonpayment." *Woolley v. City of Louisville*, 71 S.W. 893, 897 (Ky. 1903) (quoting *Walston v. City of Louisville*, 66 S.W. 385, 386 (Ky. 1902)). In addition, "[t]he constitution having designated the subjects of taxation, and the methods to be adopted in the imposition and collection of the taxes, no constitutional authority for the exercise of the power of taxation can be found outside of that instrument." *Commonwealth v. Fowler*, 28 S.W. 786, 787 (Ky. 1894).

It is further well-established that municipal powers "cannot be delegated to a private citizen[.]" *Tilford v. Belknap*, 103 S.W. 289, 290 (Ky. 1907). Our predecessor Court explained:

> In considering this subject McQuillan, in his work on Municipal Corporations (section 84) says: "Therefore the principle is fundamental and of universal application that public powers conferred upon a municipal corporation and its officers and agents cannot be surrendered or delegated to others. Contracts and ordinances relating to any municipal function which embarrass in any way the power of regulation of public affairs are ultra vires; for the municipal corporation cannot in any manner divest itself of its powers to control and regulate at all times everything within the domain of its jurisdiction."

*Id.* Moreover, Kentucky courts have long exercised equitable jurisdiction to restrain or enjoin any illegitimate exercise of the power of taxation by "officers or individuals [who] have no legal authority[.]" *City of Lancaster v. Pope*, 160 S.W. 509, 510 (Ky. 1913) (quoting *Cooley on Taxation*, p. 1418)).

The power to impose a tax encompasses the question of whether a person is subject to such tax. 64A C.J.S. *Municipal Corporations* § 2184 (2025). Stated differently, "[t]he foundation of a municipality's authority to levy a tax, **and the permissible scope of that tax**, is based on the grant of such

19

power by the state constitution or the legislature." *Id.* (emphasis added) (footnotes omitted).

Thus, a tax authority may seek declaratory relief to determine whether a person is subject to a tax. *Union Barge Line Corp. v. Marcum*, 360 S.W.2d 130, 131 (Ky. 1962); *City of Jefferson City, Mo. v. Cingular Wireless, LLC*, 531 F.3d 595, 601 (8th Cir. 2008); *Orange Cnty. v. Expedia, Inc.*, 985 So.2d 622, 629 (Fla. Dist. Ct. App. 2008); 22A Am. Jur. 2d *Declaratory Judgments* § 76 (2025). In *Union Barge*, the Department of Revenue sought and obtained a declaratory judgment concerning the right of the Commonwealth to impose a franchise tax upon certain barge companies. 360 S.W.2d at 131. Such relief is available as a threshold legal question in advance of an assessment or collection action. *Id.* at 133; *Cingular Wireless*, 531 F.3d at 601-02 (observing "courts will address the pure legal issue of whether a tax applies in a particular situation before the parties complete the administrative tax assessment and collection procedures[.]"); *Expedia*, 985 So.2d at 629 (holding tax agency has standing to pursue a declaratory judgment on the threshold question of tax liability before undertaking an assessment and collection action).

We recognize the League is empowered by statute to participate in various advisory councils and to nominate certain persons for membership on various boards and committees. *See, e.g.*, KRS 65.320 (authorizing the League's president or designee to participate on the local government training advisory council); KRS 67.7623(1)(c) (providing Kentucky 911 Services board shall contain a member appointed by the League); KRS 78.782 (permitting

20

League to appoint members to the board of directors of the County Employees Retirement System); KRS 91A.0808(1)(a) (permitting League to nominate members of the local premium tax advisory council). However, in the present matter, we perceive no authority to support the standing of the League and Association to litigate the scope of the transient room tax under KRS 91A.390 on behalf on the local authorities.

KRS 91A.390(1)(e) specifically provides "[t]he local governing body or bodies that have established a commission by joint or separate action shall enact an ordinance for the enforcement of the tax measure enacted pursuant to this section and the collection of the proceeds of this tax measure on a monthly basis." There is no indication that the League and Association are duly empowered to act as legitimate agents under any such ordinances to speak for the various local governments in court. *Hollingsworth*, 570 U.S. at 710. The League and Association "hold no office and have" neither claimed nor established any governmental or quasi-governmental authority to litigate on behalf of a tax authority in the present circumstances. *Id.*

Similarly, we cannot discern any other statutory,[5] procedural, or historical basis which would permit the League and Association to represent

---

[5] We note that KRS 91A.394 authorizes a private cause of action to enforce the provisions of KRS 91A.345 to 91A.394 *against a tourist and convention commission*. *See* Legislative Research Commission, *Informational Bulletin* No. 244 at 27 (May 2014) (noting 2014 HB 192 amended "KRS 91A.360, 91A.372, 91A.380, and 91A.394 to require tourist and convention commissions to be audited as provided in KRS 65A.030."). Specifically, the statute provides in pertinent part, "[t]he Circuit Court shall hear the action and, on a finding that the commission has violated the provisions of KRS 91A.345 to 91A.394, shall order the commission to comply with the

21

the governmental interests of their members. *Id.* at 711 (discussing special prosecutors, *qui tam* actions, and "next friend" standing); *see also Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 538 (observing that historical practice should support application of associational standing). This Court "has never upheld the standing of a private party" or other voluntary association to represent the governmental interest of a tax authority and "[w]e decline to do so for the first time here." *Hollingsworth*, 570 U.S. at 715.

## CONCLUSION

Because the League and Association have failed to establish constitutional standing, the trial court lacked subject-matter jurisdiction. Having so concluded, we need not address Airbnb's remaining claims for a writ of the second class and "certain special cases" exception. For the foregoing reasons, we reverse the order of the Court of Appeals and remand with directions to issue the requested writ.

All sitting. Lambert, C.J.; Bisig, and Goodwine, JJ., join. Conley, J., concurs in part and dissents in part by separate opinion which Thompson and Keller, JJ., join. Thompson, J., also dissents by separate opinion.

CONLEY, J., CONCURRING IN PART AND DISSENTING IN PART: Respectfully, I dissent from the Court's conclusion that the Kentucky League of Cities, Inc. (KLC) is analogous to a private person or private business and, therefore, disentitled as a matter of constitutional associational standing from

---

provisions." We perceive no basis in KRS 91A.394 which would authorize the League and Association to establish the tax liability of Airbnb.

22

asserting the interests of its members. These members are not private persons or private businesses but local governments, i.e., cities and municipal government agencies. Accordingly, I would hold, for purposes of the standing analysis, that KLC is a quasi-governmental body and, therefore, conclude it has met the requirements for associational standing at the pleading stage of litigation in the trial court.

It is unnecessary to rehash the standards of writs and general principles of law regarding standing which are uncontroversial and agreed upon. My specific disagreement with the Court's conclusion comes at the end of its opinion wherein the KLC is specifically described as a private party with no authority to represent the governmental interests of its members. I disagree. First, the KLC is a non-profit organization created by Kentucky cities for the benefit and mutual advocacy of Kentucky cities. I find it difficult to understand how an organization that exists solely for the benefit of local governments and whose membership solely consists of local governments is analogous to a private citizen.

Secondly, I do not think the Court should ignore the generality of the law. There are numerous statutes that designate and empower the KLC to nominate persons to sit upon boards or commissions that are undoubtedly governmental in nature. While this may seem insignificant, I believe the General Assembly through these statutes generally recognizes the KLC as the legitimate voice of the collective interest of Kentucky's local governments. A few of the more important statutes include: the 911 Services Board, KRS

23

65.7923(1)(c) and (f); the Board of Trustees of the County Employees Retirement System, KRS 78.782(1)(b); the Kentucky Fire Commission, KRS 95A.020(5)(i); the Kentucky Law Enforcement Council, KRS 15.315(2); and the Kentucky Board of Emergency Medical Services, KRS 311A.015(2)(c). By allowing the KLC to nominate members to boards, commissions, etc., the General Assembly is obviously trying to ensure local governments will have their interests adequately represented in the decision-making process of those entities. Since it is absurd to suggest every city get its own representative, the General Assembly has settled upon the KLC as their collective representative.

Accordingly, I conclude the KLC is a quasi-governmental body for purposes of standing.[6] Although the concept of "quasi-governmental bodies" is taken from our sovereign/governmental immunity jurisprudence, I see no reason why it should not inform our understanding of KLC's standing. I by no means imply that the KLC is entitled to governmental immunity, which is not a question presented by this case, nor do I think the standards for what qualifies an entity as quasi-governmental for purposes of immunity necessarily control the standards for what would make an entity quasi-governmental for purposes of standing; specifically, associational standing. As a general principle, our

---

[6] By the same token, I conclude the Kentucky Travel Association Industry, Inc. (KTAI) is not a quasi-governmental body. It was not created by statute, nor does it have any role within state or local government similar to the KLC. It is not mentioned at all in our statutes. While KTAI represents that some of its members are local tourist commissions or even state governmental agencies, it also represents private businesses, and I suspect private entities make up the majority of its more than 900 members. Accordingly, I find the KTAI to be qualitatively different from the KLC and not entitled to quasi-governmental status for purposes of standing.

24

sister-state, Missouri, recognizes an entity's status as quasi-governmental informs the associational standing analysis. *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 215-16 (Mo. Ct. App. 1987) (homeowners association was quasi-governmental body entitled to associational standing for the specific common law claims). While the case is obviously distinguishable, I only cite it for the general principle.

Although the KLC is not a creature of statute, it was undoubtedly created by local governments to advocate for their collective interests. And, as noted above, its ability to nominate persons to important boards and commissions within state government evinces the KLC is not merely a private person or entity nor analogous to one. I can find no better term for it than "quasi-governmental" and since I believe that name accurately denominates the KLC's functions, I conclude the Court's analysis regarding the inability of private persons or businesses to represent the government's interest in a lawsuit without specific authorization by statute or ordinance is misplaced. Moreover, nowhere in the First Amended Complaint does the KLC request back-taxes owed, nor does it even attempt to estimate the monetary figure of how much taxes should have been paid. This is not a collection action.

The Court states that under *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977), associational standing is "limited" to voluntary associations in the "traditional trade association sense." *Id.* at 344. That did not stop the Supreme Court in *Hunt* from holding "the Commission's status as a state agency, rather than a traditional voluntary membership organization,"

25

did not preclude it from asserting associational standing. *Id.* Despite the Commission being a state agency, "for all practical purposes, [it] performs the functions of a traditional trade association representing the Washington apple industry." *Id.* "[I]ts purpose is the protection and promotion of the Washington apple industry; and, in the pursuit of that end, it has engaged in advertising, market research and analysis, public education campaigns, and scientific research." *Id.*

In this case, the KLC also has a purpose to advocate for the benefit of Kentucky's cities and it provides services to its members that are analogous to a trade association. The KLC provides and facilitates investment opportunities for cities;[7] it provides training workshops for city employees;[8] it provides loans for the building of infrastructure like parks, sewer systems, and fire stations;[9] and it even provides, on certain topics, legal advice to cities or their employees.[10]

Equally as persuasive is the Supreme Court's analysis of the *members* of the Commission:

> Moreover, while the apple growers and dealers are not "members" of the Commission in the traditional trade association sense, they possess all of the indicia of membership in an organization. They alone elect the members of the Commission; they alone may serve on the Commission; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them. In a very real sense, therefore, the Commission represents the State's

---

[7] https://www.klc.org/News/8371/Investment_Pool.

[8] https://www.klc.org/News/1730/Training.

[9] https://www.klc.org/News/328/Finance.

[10] https://www.klc.org/News/492/Ask_Legal_Qustion.

26

> growers and dealers and provides the means by which they express their collective views and protect their collective interests.

*Id.* at 344-45. This same analysis applies to the cities and municipal agencies that make up the membership of the KLC. They, too, possess "all of the indicia of membership in an organization[," and the KLC "in a very real sense . . . provides the means by which they express their collective views and protect their collective interests." *Id.*

*Hunt*, therefore, in no way compels us to conclude the KLC does not satisfy associational standing but would seem to counsel precisely the opposite. That conclusion is bolstered by the fact that *Hunt* explicitly acknowledged that associational standing had, up to that time, been exclusively recognized in actions seeking declaratory relief. *Id.* at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)) ("in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind."). Declaratory relief is the kind sought here by the KLC. To the extent the Court uses elements of the *Hunt* test which we have not adopted, that is an inappropriate game of hide the ball. We cannot say on one hand that only one prong of *Hunt*'s three-prong test applies in Kentucky and then, on the other hand, use the other two prongs against a party when it is convenient to do so to deny standing.

To satisfy associational standing under our jurisprudence, the KLC needs only show that any one of its members would be entitled to sue on its own behalf. The KLC put forward to the trial court evidence or allegations that

27

at least thirty-one local governments in Kentucky impose transient taxes upon entities like Airbnb, Inc., including, specifically, Berea, Elizabethtown, and Murray. Its First Amended Complaint alleges that there are currently fifteen Airbnb properties that do not pay the transient tax in Berea; thirty-seven that do not pay it in Elizabethtown; and seventeen such properties in Murray. The KLC seeks only for the judiciary to declare that these properties are covered by KRS 91A.390. Since Berea, Elizabethtown, and Murray do have the authority to pursue a similar declaratory action in their own right, I conclude the KLC has met the only necessary test imposed by Kentucky law for associational standing at the pleading stage of litigation.[11]

Thus, I would refuse the writ of prohibition insofar as the KLC is concerned. I concur with the Court in granting the writ insofar as the Kentucky

---

[11] Although I generally agree with the Court's conclusion that a writ is available for constitutional standing purposes, this newfound recognition does introduce a rather befuddling practical conundrum. There is generally the pleading stage, the summary judgment stage after discovery has been taken, and the trial phase after evidence has been given. The standard of evidence to prove standing increases with each stage. In other words, standing can exist at one stage but not a subsequent stage. If we are to grant as a general principle that a writ of prohibition may be entertained on constitutional standing grounds, are we seriously going to grant that a party may seek a writ of prohibition at each stage on the same issue? There is a real danger that the writ procedure will be weaponized against parties to bog down litigation for years in the appellate courts. It also strikes me as absurd that we would entertain a writ of prohibition filed mid-trial on such an issue. Perhaps we have been too quick on the draw, and it may be that in entertaining a writ of prohibition upon constitutional standing grounds we should explicitly limit it to after discovery has been completed. This would avoid pre-emptory writ actions at the pleading stage when the record is sparse, and therefore not conducive to making sweeping constitutional pronouncements, but would also avoid eleventh-hour filings of a writ mid-trial; once litigation has reached the trial stage, any question of constitutional standing can be adequately addressed on direct appeal.

Travel Association Industry, Inc. is concerned, as that body is not a quasi-governmental organization.

Keller and Thompson, JJ., join.

THOMPSON, J., DISSENTING: I disagree with the majority opinion that the Kentucky League of Cities, Inc. (League) and the Kentucky Travel Industry Association, Inc. (Association) lack constitutional standing to bring a declaratory judgment action regarding whether Airbnb, Inc. is subject to local transient room taxes.

While the majority opinion correctly sets out the tests for establishing constitutional standing and associational standing, it then fails to apply these tests to examine whether the League and the Association qualify for such standing. Instead, the majority opinion appears to invent a new basis for denying associational standing—that even though a member of the League and Association has an injury, causation, and redressability, the League and Association are prohibited from asserting associational standing because they cannot in fact tax Airbnb themselves and, consequentially, cannot bring this declaratory judgment action.

After first discussing that associational standing generally involves that the parties claiming such standing be seeking redress from the illegality of government action, the majority opinion pivots to discussing how unusual it is that a private litigant would purport to establish the tax liability of another private party on behalf of various government entities (completely ignoring the fact that these "private entities" are acting in a representative capacity

29

pursuant to associational standing). It then concludes that because private litigants generally lack standing to assert a governmental interest in court, and the power of taxation is a sovereign power, the power to seek declaratory relief regarding the power to tax is limited to a taxing authority. This argument rests entirely on the majority's interpretation of cases relating to individuals bringing claims to enforce the government's rights without such individuals having any associational standing.

It is inappropriate to rely on cases that have nothing to do with associational standing to deny the League and the Association associational standing. The majority opinion is breaking entirely new ground, without acknowledging that fact, and rejecting wholly the application of the well-established associational standing tests from the controversy involving these parties.

The majority opinion mistakenly equates the right to levy taxes, a right reserved for governmental entities, with the right to bring a declaratory action regarding whether the entities that the League and the Association have as members are permitted to seek tax remittance from Airbnb. While I agree that the League and Association are prohibited from levying taxes, this limitation has nothing to do with whether they can properly seek a declaratory action on behalf of their members.

Kentucky Revised Statutes (KRS) 418.040 provides:

In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding

declaration of rights, whether or not consequential relief is or could be asked.

An actual controversy exists as to whether taxes can be collected from Airbnb and such a controversy is particularly suited to being resolved through a declaratory judgment action. *See Iroquois Post No. 229, Am. Legion v. City of Louisville*, 279 S.W.2d 13, 14-15 (Ky. 1955) ("the Declaratory Judgment Act furnishes a speedy, simple procedure for determining questions of exemption from taxation," especially because "the question of exemption is one peculiarly judicial").

The trial court may properly make a binding declaration of the rights that the member cities and city-county commissions have to collect such taxes from Airbnb. It is well established that "[a] declaratory judgment action may be brought standing alone" and need not include a "substantive claim seeking recompense." *Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833, 839 (Ky. 2013). Therefore, it is irrelevant that the League and the Association cannot properly ask to personally obtain the consequential relief of the collection of such taxes from Airbnb, where they are not seeking such relief.

All that the League and Association are seeking to do is to obtain an interpretation as to whether Airbnb comes within the definition of "any person that facilitates the rental of the accommodations by brokering, coordinating, or in any other way arranging for the rental of the accommodations" so that Kentucky cities, their tourism boards or commissions, and others designated to collect from them, may enforce their own local transient tax ordinances against Airbnb. KRS 91A.390.

31

The Court ought to simply apply the relevant tests for constitutional and associational standing and make a ruling as to whether associational standing has been established by the League and Association. In applying those tests myself, I conclude that the League and Association have conclusively established that they have member cities and city-county commissions that have enacted ordinances for the enforcement of the local transient room tax authorized by KRS 91A.390, and that their members have been injured by Airbnb's failure to remit local transient room taxes. Therefore, I agree with the trial court that they have amply alleged injuries which they seek to vindicate through judicial proceedings. I also agree with the Court of Appeals' decision to deny Airbnb's petition for writ of prohibition and mandamus. I would affirm.

Depending on the resolution of the declaratory action on the merits, if it is resolved in the League's and Association's favor, it will be up to the members of the League and the Association to determine whether they will take further measures to levy and collect such taxes from Airbnb. It needlessly wastes money and time to require the cities and city-county commissions to bring their own declaratory judgment actions to resolve the issue that was brought before the trial court more than two years ago.

Accordingly, I dissent.

COUNSEL FOR APPELLANT:

Mark F. Sommer
Cory J. Skolnick
Jason P. Renzelmann
Frost Brown Todd, LLP

Jenny A. Austin
Michael J. Kerman
Leah S. Robinson
Mayer Brown, LLP

COUNSEL FOR APPELLEE:

Hon. Thomas D. Wingate

COUNSEL FOR REAL PARTIES IN INTEREST/APPELLEES:

Mindy G. Barfield
Kyle R. Bunnell
Dinsmore & Shohl, LLP